THE LAMINGTON.

PETERSEN v. THE LAMINGTON.

(District Court, E. D. New York. June 6, 1898.)

1. MARITIME LAW — TORT COMMITTED ON FOREIGN VESSEL—WHAT LAW GOVERNS.

When a person employed as a seaman on a British vessel is injured on the high seas by the alleged negligence of the owner to provide ropes for the gear of the ship, or, if such ropes be provided, by the negligence of the master to replace faulty ropes with proper ropes thus supplied, and such seaman files a libel in rem in a district court of the United States to recover damages for such injury, the liability is measured by the British law. For such cause of action the British law does not confer the right to an action in rem.

2. SAME—JURISDICTION.

For a tort committed within the exclusive jurisdiction of a foreign country an action cannot be maintained in this country, unless the action would be maintainable by the laws of both countries.

This was a libel in rem, by John Petersen against the British steamship Lamington, George W. Duff, claimant, to recover damages for personal injuries.

Cowen, Wing, Putnam & Burlingham, for libelant.
Convers & Kirlin, for claimant.

THOMAS, District Judge. In January, 1893, John Petersen, the libelant, a Norwegian, shipped as an able seaman on board the British ship Lamington, at Buenos Ayres. On the 7th day of March, 1893, the vessel was off Cape Hatteras, and the libelant, while attempting to furl sail, fell to the deck, and received serious injuries. The Lamington was a two-masted schooner-rigged vessel, with a cross-foreyard. The fore-trysail was a fore and aft sail, rigged on standing spars. While the crew were brailing in the fore-trysail, one or more of the brails broke. Thereupon the libelant went up the

rigging to the foot rope, extending to the mast, and upon reaching the mast attempted to gather the sail in, and pass the gasket around it, when, as he claims, the gasket and foot rope parted, and he fell to the deck. The libelant testified that the brails, gasket, and foot rope were old and shriveled, and that he had been to the peak of the ship where the supplies were kept, but that no good or new ropes were there. The officers of the vessel, however, testified that there was an abundance of sufficient rope to replace any that became too much impaired. The captain and the second mate testified that after the libelant's fall they examined the ropes, and that none were gone, but that all were in good condition. This testimony as to this fact, however, must be rejected, as the log contains an entry tending to show that the rope and gear of the fore-trysail and the ropes and gear of the foremast were not all in good condition, and that the witnesses for the claimant did not tell the truth in their efforts to shield themselves or the claimant from condemnation. It must be held, therefore, that the libelant's statement as to the condition of the ropes and as to the cause of the accident is preferable. It would seem that the officers had a better opportunity to know whether there was a proper supply of new rope, but the suspicion as to their veracity, already excited, may be extended justly to this question.

The court concludes that the accident was caused by a defective rope, and that there was not a sufficient supply of rope to replace the same. What law shall govern the facts thus found? Where a person employed as a seaman on a British vessel is injured on the high seas by the alleged negligence of the owner to provide proper ropes for the gear of the ship, or, if such ropes be provided, by the negligence of the master to replace faulty ropes with proper ropes thus supplied, and such seaman files a libel in rem in a district court of the United States to recover damages for such injury, should the question of liability be governed by the English law, or by the law of the United States? The action is founded in tort; hence the liability must be determined by the law of the place where the alleged tortious act was committed or suffered. Sherlock v. Alling, 93 U. S. 99; The Scotia, 14 Wall. 170, 184; McDonald v. Mallory, 77 N. Y. 546, 550, 551; The Egyptian Monarch, 36 Fed. 773; The Scotland, 105 U. S. 24, 29; Chartered Mercantile Bank v. Netherlands India Steam Nav. Co., 10 Q. B. Div. 521, 536; The M. Moxham, 1 Prob. Div. 107; Phillips v. Eyre, L. R. 4 Q. B. 225, 238; Hart v. Gumpach, L. R. 4 P. C. 439; 1 Martens (French Trans. of Leo) 496; 1 Calvo, 552. From the above rule it follows that when a tort is committed in a foreign country, and within its own exclusive jurisdiction, an action of tort cannot be maintained in the courts of another country, unless the cause of action be maintainable in both countries. Whitford v. Railroad Co., 23 N. Y. 465; McDonald v. Mallory, 77 N. Y. 546; Leonard v. Navigation Co., 84 N. Y. 48; Wooden v. Railroad Co., 126 N. Y. 10, 26 N. E. 1050; Geoghegan v. Steamship Co., 3 Misc. Rep. 224, 22 N. Y. Supp. 749, affirmed 146 N. Y. 369, 40 N. E. 507; Chartered Mercantile Bank v. Netherlands India Steam Nav. Co., 10 Q. B. Div. 521, 536; Phillips

v. Eyre, L. R. 6 Q. B. 1, 28; The M. Moxham, 1 Prob. Div. 107. In the present case the tort on which the action is based arises from a contractual relation, as the relation of master and servant arises only from contract, expressed or implied. Stevens v. Armstrong, 6 N. Y. 442; Farwell v. Railroad, 4 Metc. (Mass.) 49; Ross v. Railroad Co., 5 Hun, 493; Bailey, Mast. & Serv. 1. The contract was made on a British ship, in a foreign port; the service was to be performed on such ship; and the alleged breach of duty on the part of the master happened on the high seas. Where persons on British soil enter into such relation, they presumptively stipulate that such duties shall be observed by the master as the British laws impose upon him, and, by implication, the obligation of such duties becomes a part of the contract of hiring. The Belgenland, 114 U. S. 355, 364, 367, 5 Sup. Ct. 860; The Egyptian Monarch, 36 Fed. 773; The Maud Carter, 29 Fed. 156. If A. and B. enter into a contract, by which B., as a servant, agrees to render personal services to A., on English territory, it would not be presumed that the master impliedly agreed that, in providing a safe place to work, or machinery, or appliances, he would do whatever might be required by the laws of some other country; and that the contractual relation implied and imposed by a foreign jurisdiction· should be regarded as a part of the stipulation in case the ·courts of such jurisdiction should assume to make reparation for an alleged breach of the contract. This is not a case where the contract was made to be performed in the country where the remedy was sought, nor where the alleged breach of duty happened within the territorial limits of such country, nor where the peace of a foreign port has been disturbed, nor where public policy or the due maintenance of police regulations requires interference by the courts of the United States. The locus in quo is the high seas, on a British ship, and the contention is solely between citizens of other countries, whose rights were stipulated on a British ship, and whose duties were to be performed on such ship, and there alone. It is unnecessary, in such case, to consider whether there should be any modification of the rule hereinafter stated in case the accident had happened under other conditions. It will be sufficient to decide the precise case at bar with sole reference to the facts presented.

The first question is this: Did the accident occur on British territory? Every vessel outside the jurisdiction of a foreign power is a detached, floating portion of the territory of the country whose flag it flies, and under whose laws it is registered. The Scotia, 14 Wall. 170, 184; Crapo v. Kelly, 16 Wall. 610, 624; Wilson v. McNamee, 102 U. S. 572, 574; In re Moncan, 14 Fed. 44; In re Ah Sing, 13 Fed. 286; U. S. v. Bennett, 3 Hughes, 466, Fed. Cas. No. 14,574; McDonald v. Mallory, 77 N. Y. 546, 551, 553; Wheat. Int. Law (Dana's Ed.) § 106; 3 Whart. Int. Law Dig. 228; Whart. Confl. Laws, § 356; 1 Kent, Comm. 26; Vatt. Law Nat. bk. 1, c. 19, § 216; 1 Calvo, 552; Bluntschli, § 317; 1 Martens (French Trans. of Leo) 496; Seagrove v. Parks, 1 Q. B. Div. 551. The authorities noted so perfectly maintain the doctrine stated that quotation, amplification, or illustration is unnecessary. The broad and funda-

mental principle is that the sovereignty of a nation extends to its private ships, and this dominion is never shared by a foreign power where the internal affairs of the vessel are alone involved, and where it is not within the territorial domain of such power. It results from the foregoing: (1) That tortious acts are governed by the law of the place where they are done. (2) That a foreign tribunal will never afford reparation for such acts, unless they are unjustified both by the law of the place where they occurred and by the law of the forum. (3) That a contract creating the relation of master and servant, made in a country for a service to be rendered in such country, imposes only such obligations, and confers only such rights, as the terms of the contract stipulate, and the laws of such country imply. (4) That the vessels of such country are, even upon the high seas, a detached, floating portion of its territory, and exclusively within the influence of its laws, so far as the internal economy of the vessel is concerned.

It now becomes necessary to determine whether the British laws permit a lien, and hence an action in rem, for an injury to a servant through the breach of the duty owing by a master to a servant. The evidence of James Mackenzie, a distinguished jurist of Glasgow, Scotland, produced by the claimant, is to the effect that such lien is not permitted, and he justifies his opinion by the rules of common law (Mayne, Dam.; Guthrie Smith, Dam.; Glegg, Reparation). and points out that the merchant shipping act of 1894 (section 558), which is a consolidation of previous acts, gives a personal remedy against the shipowner, but does not confer a right of action in rem. The advocate for the claimant also cites The Vera Cruz, 5 Asp. 270, 386, and The Theta [1894] Prob. Div. 280, which illustrate to some extent the correctness of Mr. Mackenzie's opinion. If, now, the law of Great Britain does not permit an action in rem, the present action must fail, unless it appear that such action is not of the substantive law of the country, but is a form of procedure or process of the court of the country whose jurisdiction is invoked. There is no doubt that a lien, if it exists at all, must inhere in some right of the injured person, that it remains inchoate until the right has been invaded, and thereupon matures. No process nor procedure of the court gives life to the lien, but the lien, of its own force, justifies the procedure in rem. Hence, if the lien have no existence, the procedure in rem can give it none.

In the case of The Bold Buccleugh, 7 Moore, P. C. 267, Sir John Jervis, delivering the opinion, says:

"A maritime lien is well defined by Lord Tenterden to mean a claim or privilege upon the thing to be carried into effect by legal process, and Mr. Justice Story (The Nestor, 1 Summ. 78, Fed. Cas. No. 10,126) explains that process to be a proceeding in rem, and adds that wherever a lien or claim is given upon the thing then the admiralty enforces it by a proceeding in rem, and, indeed, is the only court competent to enforce it. A maritime lien is the foundation of the proceeding in rem,—a process to make perfect a right inchoate from the moment the lien attaches; and whilst it must be admitted that where such a lien exists a proceeding in rem may be had, it will be found to be equally true that in all cases where a proceeding in rem is the proper course, there a maritime lien exists which gives a privilege or claim upon the thing to be carried into effect by legal process."

In The Avon, 2 Fed. Cas. 255, it is said:

"The ship being Canadian, and at the time of the sale in Canadian waters, and the parties Canadians, bring the case so clearly within the principles which apply the lex rei citæ that any analysis of judgments is unnecessary to show that the local law will regulate rights unless the maritime is made to apply. Whart. Priv. Int. Law, tit. 'Lex Rei Citæ,' discusses with special fullness this subject, and, so far as the facts of this case are concerned, his criticism is approved. It is familiar law in the federal courts. The municipal lex loci delicti will equally control if the conditions of this navigation are not such as to make applicable the principles governing collisions upon the sea. See Story, Confl. Law, §§ 423b, 423g; Whart. Priv. Int. Law, §§ 477, 480; Id. § 707, and notes; Whitford v. Railroad Co., 23 N. Y. 467, 475, 482; Rafael v. Verelst, 2 W. Bl. 1055; Mostyn v. Fabrigas, Cowp. 161, and notes in 1 Smith, Lead. Cas. 1024; The Halley, L. R. 2 Adm. & Ecc. 17–19, 22. This well-understood rule is, of course, not intentionally interfered with. That an act lawful by the law of the place where it takes place is so everywhere is but a truism. That no court can create a lien by its judgment upon property without its territorial jurisdiction, or assume to administer its own municipal law to create one over things not subject to its provisions, when and where the transactions occurred out of which it is asserted the right in rem springs, is also in its broadest sense admitted. Whart. Priv. Int. Law, § 828; Story, Confl. Law, §§ 322b, 401, 402a. Not only do we decide as we do in the light of such rule, but say with confidence we should dissent from the qualifications asserted by courts of great respectability. We should have decided differently The Milford, Swab. 362; The Jonathan Goodhue, Id. 526,—in which, by virtue of an English statute, Dr. Lushington gave an American master a lien not authorized by the law of his own country, and in reference to which his contract was made. They are justly criticised in The Halley, L. R. 2 Adm. & Ecc. 12. This proceeding in rem is not process. In no sense is it remedy only, or a part of the lex fori. It is the enforcement of a proprietary interest, and can no more be resorted to when that by the law of the place of the contract or of the act does not exist than a suit for possession can be maintained without a title to support it. Although there are some judgments in the supreme court which seem so to treat it, that the history of the 12th admiralty rule would authorize a different doctrine the late tendencies there, and its numerous other decisions, ably drawing the line between the law of contracts and of property and mere remedies, show clearly there is not authority in that high tribunal for sustaining this libel upon the notion that the proceeding is but a remedial form. In Vandewater v. Mills, 19 How. 82, the court, by Grier, J., comments upon the looseness of likening it to attachments in personam. The late case of Harmer v. Bell, 22 Eng. Law & Eq. 62, 7 Moore, P. C. 267, which is often approved in the supreme court, in discussing the nature of this proceeding, points out clearly the broad difference between process and remedies on the one hand, and the enforcement specifically of an interest in the thing on the other. Unless, therefore, a lien, by virtue of some law applicable to the act, was created by this collision when and where it occurred, there is no standing here by the libelant. We sustain the libel only because it is believed the maritime law affords the measure of right."

A discussion of some value on this subject will be found in Carv. Carr. by Sea (2d Ed.) 719–721. In addition, it may be remarked that damages for loss of life under Lord Campbell's act are not recoverable in proceedings in rem (The Bernina No. 2, 13 App. Cas. 1; The Theta [1894] Prob. Div. 280); and it has been held in Canada that the vice admiralty's court act of 1863 (26 & 27 Vict. c. 24 (§ 10), does not give the admiralty jurisdiction in case of personal injury (Mars. Mar. Coll. 136, 137).

The claimant suggests that the court should decline jurisdiction of the issues involved in this action. Such question is entitled to priority of decision, but it has been made secondary in this instance, and

need not now be considered at length, as the foregoing finding must result in a dismissal of the libel. However, it may be observed that this court may, in its discretion, entertain jurisdiction of actions for damages for collisions on the high seas between foreign vessels, or vessels of different nationality, or in cases of controversy arising under the common law of nations (The Belgenland, 114 U. S. 355, 365, 5 Sup. Ct. 860; The Scotland, 105 U. S. 29), or in cases of injury to a seaman on a foreign ship, happening by reason of some breach of duty of the employer (The Bark Kate Cann, 2 Fed. 241, affirmed 8 Fed. 719). But, although jurisdiction be entertained, it by no means follows that the law of the forum must be applied, although presumptively it might be applicable. What law shall govern? That may depend upon (1) a diversity in the nationality of the ships, and a diversity in the administration of law by the several nations to which the ships belong, (2) the obedience of any vessel to the laws prescribed by her own country, (3) whether the matters involved affect only parties to a particular vessel, (4) whether the cause of action arose within the limits of a particular country or on the high seas, (5) the nature of the duty for a breach of which the action is brought. The Belgenland, 114 U. S. 355, 5 Sup. Ct. 860. There may be other considerations, but these have special prominence. In every case, if a party claim that the law of a particular nation or nations should govern, he should show that such law differs from the law of the forum, otherwise the law of the forum will be applied. It has been shown in the present case that the jurisdiction of this court has been invoked for matters which affect only parties to a single vessel which is a part of British territory, and that the duty for a breach of which this action is brought arose from a contract made on such ship, that the duty was to be discharged on such ship, and that the breach occurred on the high seas. Hence the controversy must be determined by the laws of the country to which the vessel belongs. Let a decree be entered dismissing the libel.