### THE EVA B. HALL.

(District Court, S. D. New York. April 19, 1902.)

ADMIRALTY—INJURY TO SEAMAN—SUBSEQUENT NEGLECT—LIABILITY.

Libelant, a seaman, had his arm broken through being struck with a capstan bar by the mate of the vessel, and the master, during the 11 days it was at sea before reaching port, required him to continue work to some extent, threatening to put him in irons unless he did so. The perfect rest necessary to insure a natural reunion of the disunited parts of the bone was thereby prevented, and the injury greatly aggravated. Libelant told the master that his arm was broken, and it became swollen and inflamed immediately, and remained constantly in that condition. *Held* that, though there was no fault on the part of the vessel as far as the blow itself was concerned. it was liable for the master's misconduct in compelling the libelant to continue work after he was injured, instead of permitting him to have the necessary rest.

In Admiralty.

Bodine, Quigley & Whiting, for libelant.
Wing, Putnam & Burlingham, for claimant.

ADAMS, District Judge. The libelant in this action was a seaman on the schooner Eva B. Hall, and had his left forearm broken through being struck with a capstan bar by the mate of the vessel on the 4th day of November, 1901, while the vessel was on a voyage from Fernandina, Fla., to New York. He was engaged in the performance of his duties at the time. The mate has disappeared, but the libelant does not seek to hold the vessel for the original injury, nor does the vessel claim that the blow was justified in any way. It is assumed by the parties, for the purpose of this action, that there was no fault on the part of the libelant or of the vessel as far as the blow was concerned, but the libelant complains that, instead of thereafter receiving the care he was entitled to from the vessel, the master wrongfully compelled him to work during the whole of the remainder of the voyage, a period of 11 days, threatening to place him in irons, unless he should do so, with the result that he suffered great pain, and his arm was permanently injured. It is contended by the claimant that, when the injury was reported to the master of the vessel, he examined the arm with all the care and skill of which he was capable, and, supposing the injury to be merely a bruise, treated it daily with liniment; that thereafter until the termination of the voyage the libelant was only required to do such work as he could with the other arm, and, when the vessel reached port, the master and agents of the vessel were willing to send the libelant to a hospital, but he did not request to go to one, but to be paid off, which was done, and he signed clear of the vessel.

There is very little dispute about the facts in the case. The blow caused a simple fracture of one of the bones of the left forearm. The libelant was in a healthy condition, and, if the arm had been properly attended to, and left at rest, there would have been a natural union of

the disunited parts of the bone, so that in a few months the arm would probably have been as good as ever. But, during the 11 days the vessel was at sea before reaching port, the libelant was required to work to some extent, thus preventing the perfect rest which was requisite for the arm, with the result that the broken parts of the bone could not remain in apposition, and the chances the libelant had of his arm healing, or being in a condition for proper treatment when it could be obtained, were destroyed. It now appears that the arm is permanently disabled for any kind of heavy work, unless a surgical operation of cutting down to the bone, and then treating it, should prove successful in getting the parts of the bone to unite properly.

The master could not be expected to know positively that the arm was broken, but it appears that the libelant told him that it was broken. It became swollen and inflamed immediately, and constantly remained in that condition. In view of the complaint and the probability of its truth, I think it was incumbent upon the master to permit the libelant to have absolute rest; but, instead of adopting that humane course, the master threatened to put the wounded man in irons, and forced him, without necessity, to perform duties which would naturally result in an aggravation of the injury. For such action on the part of the master, I think the vessel should be held. The liability of a vessel to her crew ordinarily does not include any compensation or allowance for the resulting effects of an injury received while in her service, but is limited to the expenses of the care, attendance, and cure of the seaman. Where, however, there has been misconduct or neglect by the officers in the treatment of the seaman, after he has been wounded in the service of the ship, an additional cause of action arises against the ship for consequential damages. The City of Alexandria (D. C.) 17 Fed. 390; Whitney v. Olsen, 47 C. C. A. 331, 108 Fed. 292.

The libelant has been unable to work since the accident, and subjected to living expenses of over $100. He has incurred a surgeon's bill of $50, and paid $1.25 for medicines incident to his injury. He has not released the vessel in any way. Under the circumstances of the case, I think he should be allowed the sum of $800 to cover his outlays and obligations, as well as for some compensation for his sufferings, and to put him into a position by which he may seek such recovery as surgical science may afford him.

Decree accordingly.