## THE SARNIA.

### (District Court, S. D. New York. April 26, 1905.)

1. SEAMEN—INJURY IN SERVICE—NEGLIGENT FAILURE OF SHIP TO FURNISH PROPER TREATMENT.

Shortly before a steamship left New York for a voyage to the West Indies and return, libelant, a seaman, injured his hand on a loose wire from a cable he was handling. A few days after it became very much swollen and painful, and libelant requested to be left in a hospital at Kingston, which was the first port made. He was not left, but was treated by a physician there, who performed an operation and gave directions for further treatment on board. He was further treated by a physician at another port, but was kept on board until the return of the vessel to New York, when his hand was in such condition that he was compelled to remain in the hospital for two months, and barely escaped amputation; the result being that his hand was rendered permanently useless. It appeared that the directions of the Kingston physician were not followed, and that the hand was negligently treated by the officers of the ship, which contributed to its serious condition at the end of the voyage. *Held*, that the failure to leave libelant at Kingston and his subsequent improper treatment were acts of negligence which rendered the ship liable in damages.

2. SAME—DAMAGES.

An award of $1,500 made to a seaman 43 years old for the permanent crippling of his right hand through the neglect of the ship to furnish him with proper treatment after an injury to the hand in the service.

In Admiralty. Action by seaman to recover for loss of use of his hand through improper treatment after its injury in the service of the vessel.

Wilford H. Smith, for libellant.

Moore, Wallace & Dudley, for claimant.

ADAMS, District Judge. This action was brought by Carmelo Greco, a seaman on board the steamship Sarnia, to recover for personal injuries sustained by him, while on a voyage from New York to the West Indies and return, in July, 1904. It is alleged that before leaving New York, the libellant's right hand was injured by a loose wire from a cable which he was handling sticking in it while engaged in the performance of his duties, and that in a few days thereafter he suffered severe pains and the hand became greatly swollen. It is further alleged that the libellant asked the master to leave him ashore at the first port at which the vessel should touch; that the vessel was bound for Kingston and Port Limon, but the libellant was not left at either port but was kept on board and in consequence his hand became so badly and dangerously af-

fected, notwithstanding some treatment on board, before the vessel's return to New York, that when he reached there, he was obliged to go to a hospital, where he remained for about two months, and barely escaped amputation of his hand, which he has lost the entire use of, whereas it could have been saved by proper treatment and medical attention.

The claimant denies that there was any defect in the cable for which it could be held responsible, or any negligent treatment and alleges that when the hand was examined by the chief officer of the vessel, in consequence of the libellant's complaint that his hand was paining him, he applied a treatment of hot poultices, which was continued until the vessel arrived at Kingston, where the libellant was sent ashore and examined by a physician and surgeon, who advised the master that the libellant was suffering from a whitlow, and it was not necessary or advisable to send him to a hospital at Kingston. It is further alleged that this physician and surgeon treated the libellant's hand for two days, the 8th and 9th of July, and prepared various dressings to be subsequently applied, which was accordingly done. The next port was Port Limon, and when that was reached, the libellant was sent ashore by the master for the purpose of having his hand examined and properly treated there, twice a day, on the 15th, 16th, 17th and 18th days of July, and the libellant was requested by the physician and surgeon there to go to the hospital but the libellant refused to do so. The physician thereupon advised the master of the ship that it was not necessary to send the libellant to a hospital at Port Limon and suggested that there might be danger of his contracting a fever if it were done and advised that he be taken to New York and transferred to a hospital there. The physician gave to the master full instructions as to the treatment of the injured hand, which were duly observed by the mate and stewardess of the vessel, and when the vessel reached New York, the master caused the libellant to be sent to a hospital there, where he was cared for at the expense of the master for a long time thereafter. Further answering the claimant alleges that the master of the vessel in not compelling the libellant to go to a hospital in the West Indies and in taking the libellant to New York for hospital treatment and the treatment which was given him on the vessel, was under the advice of competent physicians and surgeons.

The testimony shows that the libellant was hurt as stated by him in the libel but not that there was any negligence in such respect on the ship's or libellant's part. The case may be regarded as one where a seaman is injured in the service of the ship, without negligence, leaving the question to be determined whether there was any negligence on the ship's part in the subsequent care of the seaman, which gives him a right of action.

It appears that a few days after the ship sailed from New York, the libellant's hand commenced to swell from the effects of the wound and he asked that he be put ashore at Kingston for treatment in the hospital there. Before arriving his hand was treated on board under direction of the chief officer with "black brown bread and onions," which softened the skin and the chief officer took the soft

part off with a knife. No apparent good effect followed and when the port was reached, the libellant was sent ashore for examination by the physician there, who usually attended to such matters for the steamship line to which the vessel belonged. The physician testifies he found that it was a case of whitlow but it was unfit for an operation the first day. Instructions were then given for warm antiseptic applications and further instructions for another examination the next day, the 9th of July. An operation was then performed, causing a free discharge of pus, and the physician's opinion, communicated to the ship's officers, was that such further treatment as might be necessary could be carried out on board the ship, and would effect a complete recovery in a week or ten days. The libellant was accordingly kept on the ship and some treatment attempted there. The ship then proceeded to Port Limon, stopping en route at Savanilla for about 36 hours and at Cartagena about four hours. No physicians were called in and none were apparently available at either of those places. At Port Limon, a physician was employed to attend the libellant and he did so on the 15th, 16th, 17th and 18th days of July. The physician there found a deep seated inflammation of the hand involving all the fingers and he advised the master of the ship that a transfer should be made of the patient to the hospital under his charge for treatment, because he could secure better attention there than on board ship. This physician testifies that the libellant refused to go on account of the Port Limon climate and he returned to the ship, after the physician had advised the chief officer how to treat him. The physician felt confident that with the instructions and dressings given, the patient would suffer no permanent injury by reason of sailing back to New York.

There is a conflict between the libellant and the officers of the ship as to whether he wished to be transferred to the hospital at Port Limon but I have no doubt that the libellant wished to be left at Kingston, for treatment in the hospital there, and whether or not he wished it at Port Limon is apparently immaterial. The master, assisted by medical advice, was required to determine what should be done with the libellant. The chief officer said "We don't go by the wishes of the sailor."

On the return voyage to New York, the libellant was treated on the ship by the chief officer and the stewardess, with the result that when New York was reached, he was in a serious condition and was sent to a hospital, where he remained about two months. The injury, however, had gone too long without adequate attention and he could not be cured but is apparently crippled, as far as his right hand is concerned, for life.

The physician, under whose charge the libellant was in the New York hospital, testified that when he came there the wound was not clean and was in a very bad condition. Proper treatment resulted in the hand being saved to the libellant but in such a condition as to be thereafter practically useless for any manual labor. The testimony show that if proper treatment had been given at Kingston or Port Limon, the usefulness of the hand would, in all probability,

have been preserved, but the treatment that was given on board the ship resulted in a permanent partial disability. The chief officer, who had charge of the libellant on.board did not apparently follow the instructions given him by the physician at Kingston but substituted a method of his own, which he says he "learned at school," taking the pus out when he deemed necessary,. that is, as he said, "By my knowing it, by my knowledge." When the libellant came back from the physician's examination at Port Limon, the officer first discovered the formation of pus, and the doctor there advised him to keep the wound clean, to "take the pus out all the time.". The physician in Kingston had. given him practically the same advice but little or no attention was given to the formation of pus. In fact, I am forced to the conclusion that the libellant was negligently treated by the ship's officers. The master gave him no personal attention; the chief officer's was useless, as was also that of the stewardess, as far as any favorable results were concerned. But for the treatment he received in New York, the hand would probably have been lost. With it, he lost control of his second and third fingers but the hand could not then be put in a normal condition. If the pus had been removed at first and the wound kept clean, it is probable that no serious results would have followed the original wound, which was not of a very important character. In this respect, at least, there was marked neglect. The libellant should have been left in the hospital at Kingston in conformity with his request, but even at Port Limon, it was probably not too late to save the full usefulness of the hand, as it turned out to be seven days later in New York.

The right of seamen to obtain substantial compensation for such negligence as is apparent here is well settled. The Eva B. Hall (D. C.) 114 Fed. 755; The Troop, 128 Fed. 856, 63 C. C. A. 584.

It only. remains to determine what the libellant should recover. Before the injury he was a strong, healthy man, about 43 years of age, and earning as a sailor from $20 to $25 per month. He is only partially disabled but will be unable hereafter to make such a living as he has been accustomed to. It seems to me that $1,500 will be a proper sum to allow him under the circumstances.

Decree for libellant for $1,500, with interest.