## THE VAN DER DUYN.

### (Circuit Court of Appeals, Second Circuit. November 13, 1919.)

### No. 32.

1. SEAMEN ⬤⟶11—SHIPOWNER LIABLE ON ACCOUNT OF INJURY IN SERVICE TO EXTENT OF EXPENSE OF TREATMENT.

   Where, on the outward passage on a voyage from New York to Cuba and return, one of the bones in a seaman's forearm was broken, but a physician who examined the injury at Cuba did not discover the fracture, and directed the treatment which was followed by the officers on the return trip, after which the fracture was treated in a hospital, with a result as favorable as it would have been if treated at first, the shipowner *held* not liable in damages beyond the expense of treatment and cure.

---

⬤⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. SEAMEN ⊂⇒11—SHIP'S DUTY TO INJURED SEAMAN.

The requirement of a ship is to give reasonable medical treatment under all the circumstances to an injured seaman, and it will not be held responsible for an error of judgment on the part of the officers, if their judgment is conscientiously exercised with reference to existing conditions.

Appeal from the District Court of the United States for the Eastern District of New York.

Suit in admiralty by Alfred Testut against the steamship Van der Duyn; the Siberian Steamship Corporation, claimant. Decree for libelant, and claimant appeals. Reversed.

For opinion below, see 251 Fed. 746.

Kirlin, Woolsey & Hickox, of New York City (L. De Grove Potter, of White Plains, N. Y., of counsel), for appellant.

Silas B. Axtell, of New York City (Arthur Lavenburg, of New York City, of counsel), for respondent.

Before WARD, ROGERS, and MANTON, Circuit Judges.

MANTON, Circuit Judge. On the 21st of April, 1916, while the steamship Van der Duyn was at sea, the respondent, a coal passer, received a fracture of the ulna of his right arm. His right arm was caught between a bucket of ashes and the upper edge of an opening in the side of the ventilator. While the bucket was being hoisted up to the level of a doorway, through which it was to be put back out on the deck of the vessel, respondent's arm became caught and injured. The cause of the injury was due to the failure, on the part of some one operating a winch, to use due care and diligence.

No evidence of unseaworthiness or a failure to provide proper appliances for the vessel was adduced, and from this record the injuries resulted from the negligence, if any, of a seaman on the vessel. The vessel sailed from New York on April 20th, bound for Saga La Grande, Cuba. She was a Dutch ship. Respondent signed the regular shipping articles, joining the vessel on April 19, 1916. About five days later, the vessel arrived at Cuba. At this time respondent's arm was badly swollen. He was examined by a doctor, but was not sent to a hospital, and returned on the voyage of the vessel back to New York. After landing, about two weeks after the accident, respondent went to the Long Island College Hospital, and there his arm was successfully treated. An X-ray was taken, which indicated an overlapping of the bone. This necessitated an operation. The surgeon who performed this operation was not called as a witness. The only help afforded the District Judge was the X-ray plate, which was received in evidence. The court below found that a small portion of the bone was removed in order to set the arm as well as it might be. The fracture was entirely healed and good union secured, and the respondent was found to have recovered muscular strength, power, and motion of the wrist and forearm, with the exception of slight inability to complete rotation of the hand at the wrist. This is due to some boney projection on one of the fractured surfaces.

The District Judge found that there was some slight muscular

⊂⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

atrophy, due to interference with the use of his forearm and to the muscular injuries relating directly back to the fracture and the operation. However, it was found to only slightly interfere with his muscular strength in general. Much of this information was obtained by the District Judge from the X-ray plate which was offered in evidence against the objection of the appellant.

[1] The District Judge held that, even if the officers of the ship had known that the respondent's injury was a fracture of the arm, and had not erroneously diagnosed the case, the result to the arm would not have been different. The charge is that the respondent might have received treatment at the hospital in Cuba, which would have alleviated his suffering and secured him more sympathetic treatment on his voyage back to New York. The court further found that the condition of respondent's arm at the time of the trial, when viewed from statements of the witnesses as to its appearance during the period at Cuba and during the voyage back to New York, indicated that the operation at the Long Island College Hospital, after respondent's return to Brooklyn, was made necessary because of the fracture, not because of lack of treatment. He found, further, that the delay added little to the permanent injury found at the time of the trial, which, the court said, would have resulted in spite of the operation at any time. Indeed, it is asserted by the District Judge that, even if a careful examination had been made at Cuba, the operation itself would have been postponed until the vessel arrived in New York. Liability, however, was imposed upon the theory that the officers of the ship did not give the respondent considerate treatment, and this for the reason that they concluded he was shamming, looking upon the injury as a mere bruise or laceration of the flesh. In this we think he was in error.

The ship had no physician, and the officers did the best that could be expected of laymen. They treated the bruise and cut and prevented infection. When the ship reached quarantine at Cuba, a doctor examined the injury and reported that no other treatment was necessary. This was an error of diagnosis of the condition of the arm. The officers of the ship owed to respondent the exercise of reasonable care to furnish such aid as ordinarily prudent persons would under similar circumstances. The swelling of the arm may well have misled the examining doctor at quarantine, Cuba. He did not report a fracture, or any unusual or serious condition of the arm, and therefore it cannot be said that in the exercise of reasonable care it was incumbent upon the officers of the vessel to take the patient to a hospital in Cuba. On the return voyage to New York, the chief officer continued the treatment as directed by the doctor. When the vessel arrived in New York, the captain ordered a doctor for respondent; but respondent did not return to the ship. His disappearance is accounted for by his going to the hospital in Brooklyn. The hospital bills and incidental expenses were paid by the shipowner.

[2] There is testimony by the respondent that the ship officers accused him of shamming on the return voyage. There is contra evidence that he was well treated and permitted to walk on deck, smok-

ing and doing the best he could to alleviate his pain and patience. We see nothing in the conduct of the officers of the ship which warrants condemnation, or upon which there may be fixed a liability for the shipowner. The requirement of a ship is to give reasonable medical treatment under all circumstances. There must be reasonable ground to believe that consequences more serious than the swelling, pain, and suffering which ordinarily attend a fracture or a severe laceration resulted, before liability be imposed. Medical advice received and followed, as was done by the officers of the ship, is all that could reasonably be expected from the officers here under the circumstances disclosed by this record. The Cuzco, 154 Fed. 177, 83 C. C. A. 181. It was said in The Iroquois, 194 U. S. 240, 24 Sup. Ct. 640, 48 L. Ed. 955:

"A seafaring life is a dangerous one, accidents of this kind are particularly liable to occur, and the general principle of law that a person entering a dangerous employment is regarded as assuming the ordinary risks of such employment is peculiarly applicable to the case of seamen."

Liability was denied in The Drumelton (D. C.) 158 Fed. 454, where there was a leg fracture of one of the small bones only, and where the master did not obtain medical assistance at a nearby port. As was said in The Kenilworth, 144 Fed. 376, 75 C. C. A. 314, 4 L. R. A. (N. S.) 49, 7 Ann. Cas. 202:

"In considering whether he [the master] was or was not duly careful, we are bound, so far as possible, to put ourselves in his place. He was not required to have the skill or discernment of a surgeon, and the opinion which he formed, if viewed in no clearer light than was afforded by such limited knowledge as may be justly attributed to him, does not appear to have been an unreasonable one, and the treatment which he adopted, when considered in connection and conformity with that opinion, was neither negligent nor improper."

The ship will not be held responsible for an error of judgment on the part of the officers, if their judgment is conscientiously exercised with reference to conditions existing at the time. It is only where the external extent of the injury in question should have moved them to ascertain its real nature, when they could do so without serious diversion of the course, and at comparatively trivial expense, that the courts have permitted liability to attach to the vessel. The Osceola, 189 U. S. 158, 23 Sup. Ct. 483, 47 L. Ed. 760; The Governor (D. C.) 230 Fed. 857; The Scotland (D. C.) 42 Fed. 925; The Eva B. Hall (D. C.) 114 Fed. 755.

We do not think that error of judgment of the officers of the ship, or the surgeon who was employed, and the lapse of time before the respondent received competent medical aid, are sufficient upon which to base liability. The court below is directed to allow the respondent such sums of money, if any, as he paid for medical care, and as may be due him for unpaid wages.

Decree reversed.