### WENZLER v. ROBIN LINE S. S. CO.

(District Court, W. D. Washington, N. D. December 27, 1921.)

No. 6016.

1. **Seamen** ⬤⟿3—**Action for injury while in a foreign port is governed by the law of the flag.**

    An action by a seaman of a vessel of the United States for an injury received in a foreign port, while in performance of his duties on board, through alleged negligence in the management of the ship, is governed by the law of the United States, and not that of the port.

⬤⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**2. Removal of causes ⬤⟿3, 19 (5)—Action at law by seaman for personal injury held removable, the provisions of the Employers' Liability Act against removal not applying.**

An action at law in a state court, brought by a seaman for personal injury under La Follette Seamen's Act, § 20, as amended by Merchant Marine Act 1920, § 33, *held* removable into the federal court; that part of the Employers' Liability Act as to removal not being adopted as part of the Marine Act.

At Law. Action by John Wenzler, Jr., against the Robin Line Steamship Company. On motion to remand to state court. Denied.

Walter S. Fulton and Ben L. Moore, both of Seattle, Wash., for plaintiff.

Bogle, Merritt & Bogle, of Seattle, Wash., for defendant.

CUSHMAN, District Judge. The plaintiff, a citizen of the state of Washington, sues the defendant, a corporation of California, for $52,-350. The complaint avers that plaintiff was a seaman in the employ of the defendant on the steamship Robin Gray; that, in the harbor of Havana, Cuba, plaintiff, on June 24, 1920, while painting the bulkhead above the engine room of said steamship, from a scaffold upon which he had been ordered by the first engineer to perform such service, fell by reason of defects in the scaffold, which defects are charged to defendant's negligence. For the injury sustained, this suit is brought.

The cause was removed to this court from the state court and plaintiff now moves to remand to the state court on the ground that removal is expressly prohibited by section 6 of the Railway Employers' Liability Act as amended (Comp. Stats. § 8662) and is also forbidden by section 28 of the Judicial Code (Comp. St. § 1010), which provision, plaintiff contends, is expressly adopted by section 33 of the Jones Act (Merchant Marine Act of 1920; 41 Stats. p. 988), amending section 20 of the La Follette Act (38 Stats. p. 1164 [Comp. St. § 8337a]).

[1] Before considering the question of whether the denial of the right of removal in the Employers' Liability Act has been embodied in the Jones Act, it will first be necessary to determine whether—plaintiff's injury having been sustained in Cuban waters—the questions involved will be determined under the Cuban law or under the Jones Act. In the solution of this question, cases of collision, such as involved in Smith v. Condry, 42 U. S. (1 How.) 28, 11 L. Ed. 35, and The Eagle, 75 U. S. (8 Wall.) 15, 19 L. Ed. 365, have no application, for they are not concerned with the "internal discipline or management of the ship."

It cannot be denied that, if considered apart from the ruling itself certain language used by the court in The Hanna Nielsen (D. C.) 267 Fed. 729, 732, lends support to defendant's contention, yet that which was actually decided in that case was that, libelant having repudiated the law of the flag—that is, the law of Norway—and having failed to prove as a fact the British law, on which he relied, the latter law being that of the ship's harbor at the time of the injury, recovery of full indemnity would be denied libelant. That the effect for which con-

tention is now made is not to be given to the language so used is further shown by a consideration of the cases cited in support of the language used. These cases are—The Cuzco (D. C.) 225 Fed. 169; The Belgenland, 114 U. S. 355, 5 Sup. Ct. 860, 29 L. Ed. 152; Chelentis v. Luckenbach, 247 U. S. 372, 38 Sup. Ct. 501, 62 L. Ed. 1171; The Lamington (D. C.) 87 Fed. 752; The Scotland, 105 U. S. 24, 26 L. Ed. 1001.

The Belgenland, 114 U. S. 355, 5 Sup. Ct. 860, 29 L. Ed. 152, so cited, was a case of collision, not in a harbor, but on the high seas, between a Norwegian bark and a Belgian steamship. The bark was sunk and her master, on behalf of the owner of the bark and surviving crew, libeled the steamship in an American port.

Chelentis v. Luckenbach, 247 U. S. 372, 38 Sup. Ct. 501, 62 L. Ed. 1171, was a case of a seaman on board an American vessel owned by a Delaware corporation, who was injured, not in territorial waters, but upon the high seas, because of an alleged improvident order given by an officer of the vessel. Full indemnity was sought under section 20 of the La Follette Act (38 Stats. 1164), which the court limited in its application to the question of fellow servant, and held did not in any way affect the measure of relief to be afforded according to the rule announced in The Osceola, 189 U. S. 171,, 23 Sup. Ct. 483, 47 L. Ed. 760.

In The Lamington (D. C.) 87 Fed. 752, a seaman on a British vessel was injured on the high seas because of a faulty rope. The libel in rem was dismissed, because the British law gave no lien for the injury.

In The Scotland, 105 U. S. 24, 26 L. Ed. 1001, the case was one of collision on the high seas between a British ship and a ship of the United States. The law of the United States was held to be controlling, as the ships were of different nationalities and the law of the forum applied.

In the Cuzco (D. C.) 225 Fed. 169, the injured libelant was a stevedore, and not a seaman. Judge Neterer did not in that case refuse to enforce the law of the ship's flag. He held, as shown at page 175, that neither the law of British Columbia, in a harbor of which the ship was lying at the time of the injury, nor the law of Norway, that being the nation of the ship's flag, gave a maritime lien or right of action in rem to an injured stevedore. The fact that the law of Norway gave no such lien is not disclosed by the syllabus in that case.

It may be further said that the same reasons do not obtain for holding a stevedore, hired in a port foreign to the ship's flag, he being, presumably, ignorant of the laws of such flag, to have agreed to such law when, to perform a brief and temporary service, he steps on shipboard in a harbor of the country of which he is a citizen, or that in which he is sojourning. He has signed no articles to live with the ship and serve her. While the relation of the stevedore to the ship may, in a sense, have to do with the internal management and discipline of the vessel, it is in no sense the intimate and mutually dependent relation existing between a seaman and his ship. Of the relation of a seaman to his ship, it is said in Re Ross, 140 U. S. 453, at pages 473 and 474, 11 Sup. Ct. 897, at page 903 (35 L. Ed. 581), quoting with approval the then Secretary of State, Mr. Evarts:

" * * * That principle is that, when a foreigner enters the mercantile marine of any nation and becomes one of the crew of a vessel having un-

doubtedly a national character, he assumes a temporary allegiance to the flag under which he serves, and in return for the protection afforded him becomes subject to the laws by which that nation in the exercise of an unquestioned authority, governs its vessels and seamen. '* * * This system of law attaches to the vessel and crew when they leave a national port, and accompanies them around the globe, regulating their lives, protecting their persons, and punishing their offenses. The sailor, like the soldier during his enlistment, knows no other allegiance than to the country under whose flag he serves.' "

In none of the foregoing cases was the question considered or decided between the law of the ship's flag and the law of the ship's harbor at the time of injury. It is clear that these cases lend no support to the doctrine that the locus of the injury was the harbor and not the ship.

In the case of The Hanna Nielsen, the lower court refused indemnity for the injury, but ordered a reference for the ascertainment, under the rule in The Osceola, 189 U. S. 171, 23 Sup. Ct. 483, 47 L. Ed. 760, of the amount to be allowed for maintenance and cure. The libelant appealed. The lower court was sustained in denying indemnity, but the decree was modified, so as to deny maintenance and cure, in addition to that already received by libelant, and the libel dismissed. 273 Fed. 171.

It is deemed significant that Judge Hough, in this case, in disposing of the question of the law applicable, refrains from either finding that the cause sounded in tort or that the British law, the law of the harbor, was controlling. The court in that connection said:

"If the suit be regarded as sounding in tort, then the trial court had no jurisdiction, unless the tort were maritime, and the lex loci delicti applies. Whether the locus is to be regarded as on a Norwegian ship, and therefore Norwegian, or in Gibraltar harbor, and therefore British, is a question into which it is not necessary to go, further than to note that under no circumstances shown here can the law of the United States apply. The sole function of our courts is to furnish a remedy while enforcing by comity the substantially applicable law. As pointed out above, libelant repudiates Norwegian law as furnishing any ground for recovery; that he was right in so doing the evidence conclusively proved." 273 Fed. at pages 172 and 173.

In the conclusion reached in the instant case, the court has been further influenced by the fact that no case has been called to its attention where, for an injury to a seaman occurring on a foreign vessel in an American harbor, an American court has refused to apply, where pleaded and proven, the law of the flag.

In the case of Rainey v. New York & P. S. S. Co., 216 Fed. 449, 132 C. C. A. 509, L. R. A. 1916A, 1149, the Court of Appeals for the Ninth Circuit, Judge Ross writing the opinion, finds the ship, a British vessel, to have been unseaworthy, and that such condition was the cause of the injury inflicted, resulting in the death, in a Peruvian harbor, of the engineer, an American citizen, signing on in a port of the United States. The decree dismissing the libel was affirmed because, even accepting the libelant's contention that, as an American citizen of the state of Washington, deceased was entitled to invoke its laws, yet, as pointed out by Judge Ross, there is no statute of the United States giving an action for death by wrongful act, and the statutes of the state of Washingon, giving such a right, have force only within the confines

of the state. While reaching this conclusion, the court in that case, in disposing of the question, also said:

"In the libel the cause is designated as one 'of tort, civil and maritime,' and, besides allegations bearing upon the question of the amount of damages, it contains these further averments: 'That the laws of the United States in force at all of said times between the 1st day of August, 1907, and the 30th day of January, 1908, provided, inter alia, that in every contract of service, express or implied, between the owner of a ship and the master or any seaman thereof, there is implied, notwithstanding any agreement to the contrary, an obligation on the owner of the ship that the owner of the ship shall provide a seaworthy ship for the voyage at the time of the commencement of the voyage, and shall keep said ship in a seaworthy condition for the voyage during the voyage; and that the laws of Great Britain in force at all times between the 1st day of August, 1907, and the 30th day of January, 1908, provided, inter alia, as follows: "In every contract of service, express or implied, between the owner of a ship and the master or any seaman thereof, and in every instrument or apprenticeship, whereby any person is bound to serve as an apprentice on board any ship, there shall be implied, notwithstanding any agreement to the contrary, an obligation on the owner of the ship that the owner of the ship, and the master, and every agent charged with the loading of the ship or the preparing of the ship for sea or the sending of the ship to sea, shall use all reasonable means to insure the seaworthiness of the ship for the voyage at the time when the voyage commences, and to keep her in a seaworthy condition for the voyage during the voyage." St. 57 & 58 Vict. c. 60, commonly known as the Merchants' Shipping Act, 1894, and acts amendatory thereof.' It will be seen from the foregoing that the gist of the cause sued on is the alleged failure of the charterer as owner pro hac vice to provide a safety lamp, for lack of which the vessel is alleged to have been unseaworthy. Whether the libel sounds in tort or contract, we deem immaterial. In admiralty, courts determine causes upon equitable principles, and treat as immaterial whether the pleading counts upon contract or tort. California-Atlantic S. S. Co. v. Central Door & Lumber Co. (C. C. A.) 206 Fed. 5, 7, and cases there cited. See, also, 2 Parsons, Shipping and Admiralty, 369." 216 Fed. at page 452, 132 C. C. A. 512 (L. R. A. 1916A, 1149).

The court then goes on to point out that, both under the laws of the United States and the British law, as shown by a quotation from The Edwin I. Morrison, 153 U. S. 199, 210, 14 Sup. Ct. 823, 38 L. Ed. 688, the ship's owner carrying goods warrants his ship to be seaworthy. Judge Ross then continues:

"A fortiori does the same rule apply in cases where the lives of passengers or crew are involved. So if, instead of the injuries to Rainey having resulted in his death, he had survived and had brought a libel for damages, for the injuries he received, and it be true that the failure of the owner to equip the ship with safety lamps rendered her unseaworthy, he could undoubtedly have reported. * * * The chartering of the ship in question to an American corporation for the particular voyage in question did not deprive the ship of its nationality. When Rainey, although a citizen of the state of Washington, went before the British consul at Seattle and signed the shipping articles, and thereupon stepped upon the British ship flying the British flag as a member of its crew, as the record shows he did, he stepped upon British territory and became entitled to the protection and benefit of all British law in behalf of British seamen, and subject to all of its obligations and liabilities." 216 Fed. at pages 453 and 454, 132 C. C. A. 513 and 514 (L. R. A. 1916A, 1149).

[2] Both upon reason and authority, it is therefore clear that the law of the ship's flag, and not that of Cuba, controls in the present suit. Having reached this conclusion, it will now be necessary to consider the appropriate provisions of the Jones Act. Section 33 of this provides:

"That section 20 of such Act of March 4, 1915 [La Follette Act] be, and is, amended to read as follows: That any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply; and in case of the death of any seaman as a result of any such personal injury the personal representative of such seaman may maintain an action for damages at law with the right of trial by jury, and in such action all statutes of the United States conferring or regulating the right of action for death in case of railway employees shall be applicable. Jurisdiction in such actions shall be under the court of the district in which the defendant employer resides or in which his principal office is located." 41 Stats. p. 1007.

In using the words "shall be under the court of the district," etc., Congress, doubtless, had mainly in mind the continental United States, comprising the several states. The territory included in a single jurisdiction of a state court may be called a "district"; but it is not always so designated. It will be noted that the expression is "court of the district"; the word "court," and not "courts," is used—that is, the singular and not the plural.

In all of the states, the districts in which courts of the United States sit geographically include or cover the same territory that is covered by the courts of the several states in their exercise of general jurisdiction. If it had been intended by this act alone to confer jurisdiction on the United States District Court, and expressly recognize, at the same time, that of the courts of general jurisdiction of the state in which such district court was held, the word used would not have been "court," but doubtless would have been "courts," and it would not have been limited to districts, but language would have been used similar to that of subsection J of section 30, already appearing in the act before the above-quoted language of section 33, amending section 20 of the La Follette Act. The language of subsection J, inter alia, is:

"(c) * * * The District Courts of the United States are given jurisdiction (but not to the exclusion of the courts of the several states, territories, districts, or possessions) of suits for the recovery of such damages, irrespective of the amount involved in the suit or the citizenship of the parties thereto. * * *" 41 Stat. p. 1003.

Congress, in conferring jurisdiction, must be presumed to intend conferring it on its own courts, the national courts. Congress may, of course, within the sphere of national authority, deprive the state courts of jurisdiction. The extent to which it may or may not confer jurisdiction over federal questions upon a state court it is not necessary to consider. The jurisdiction of the state courts being general in its nature, that general jurisdiction may be so far recognized by Congress by legislation concerning the enforcement of rights arising out of federal law as to leave the door of the state court open to the litigant. The Hamilton, 207 U. S. 398, 28 Sup. Ct. 133, 52 L. Ed. 264.

The language used in the saving clause:

"Saving to suitors in all cases the rights of a common-law remedy where the common law is competent to give it." Section 24, Judicial Code (3)

—was appropriate to the end in view. Congress did not seek to confer a power, but rather to leave undisturbed any rights to sue at common law, including the right to sue in a state tribunal.

Section 20 of the La Follette Act, as amended (section 33 of the Jones Act) provides that any seaman may, at his election, maintain an action for damages at law; that is, he does not have to sue in the admiralty, but may sue at law in the District Court. If Congress had intended anything else, the language would have been "may at his election maintain in the state court an action at law."

Passing to the consideration of the precise question raised on the motion to remand—that is, whether Congress, in the Jones Act, by reference to the Employers' Liability Act, intended to include and adopt as part of the Merchant Marine Act that part of the Employers' Liability Act forbidding removal—it will be noted that the Merchant Marine Act provides:

"That any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply; and in case of the death of any seaman, as a result of any such personal injury the personal representative of such seaman may maintain an action for damages at law with the right of trial by jury, and in such action all statutes of the United States conferring or regulating the right of action for death in the case of railway employees shall be applicable." 41 Stat. p. 1007.

By section 8660, U. S. Comp. Stats., it was provided that a railway employee shall not be held to have assumed certain risks of his employment. This constitutes both a "modifying" of the common-law right in case of injury and a "regulation" of the right of action in the case of death. The same may be said of section 8661, declaring void contracts exempting the carrier from liability, but giving it a right of set-off in certain instances.

These provisions of the Employers' Liability Law may fittingly and appropriately be described as "modifying or extending the common-law right or remedy in case of personal injuries"; but the expression quoted is most inapt, if intended to include a limitation of jurisdiction by denying the right of removal as provided in section 8662, which provides:

" * * * The jurisdiction of the courts of the United States under this act shall be concurrent with that of the courts of the several states, and no case arising under this act and brought in any state court of competent jurisdiction shall be removed to any court of the United States."

Section 28 of the Judicial Code provides:

" * * * Provided, that no case arising under an act entitled 'An act relating to the liability of common carriers by railroad to their employees in certain cases,' approved April twenty-second, nineteen hundred and eight, or any amendment thereto, and brought in any state court of competent jurisdiction, shall be removed to any court of the United States. * * * "

If the foregoing had been any portion of the Employers' Liability Law, which Congress intended to make a part of the Merchant Marine Act, it would have been much simpler, easier, and plainer to have

adopted the quoted portion of section 8662, instead of using the opening and closing language of section 20, as amended by the Merchant Marine Act.

If the removal statute be in any sense a remedy, as distinguished from a right, it is then the remedy of the defendant. But section 20, in speaking of rights and remedies, is not referring to those of the defendant, but to the rights and remedies of the plaintiff at common law. Upon reading the expression, "modifying or extending the common-law right or remedy in cases of personal injury to railway employees," there is no escape from the impression that the dominant thought in the mind of Congress was a modifying or extending, in certain particulars, of the common-law right or remedy "in cases of personal injury."

The sections above noted from the Employers' Liability Act regarding assumption of risk and contracts by carriers to exempt themselves from liability constitute modifications of common-law rights or remedies peculiarly appropriate to personal injury cases. But the statute of removal has no more to do with personal injury cases than any other case. The adding to the expression, "modifying or extending the common-law right or remedy in cases of personal injury," of the further words, "to railway employees," was rendered necessary by reason of the fact that the desired modification of the common-law rights and remedies for personal injuries was particular or peculiar to railway employees, in that Congress had extended to them alone the advantages of such modification, which benefits it was Congress' desire to also confer upon seamen. Hence the reference to railway employees is made to distinguish and point out the law referred to. rather than describe or define its scope or nature, or give to the words "modifying or extending the common-law right or remedy in case of personal injury" any other than the ordinary meaning.

That portion of section 8662 and section 28 denying removal does not modify the common law in cases of personal injuries. It modifies the statute law of removal. To hold that Congress intended to incorporate this provision, it is necessary to find that the statute on removal is a part of a common-law right in case of personal injury. The statute of removal of causes is no part of the common law. It cannot even be said to be either a modification or extension of a common-law right or remedy. It is merely the machinery for getting the case into the right court.

Motion to remand denied.