## Case No. 1,203.

### The BECHERDASS AMBAIDASS.

[1 Lowell, 569;[1] 6 Am. Law Rev. 74.]

District Court, D. Massachusetts. April Term, 1871.

ADMIRALTY—JURISDICTION—FOREIGN SEAMEN— PROTEST OF CONSUL.

A libel brought in the United States against a British vessel for wages, by British sailors shipped for a voyage ending in a home port, will not be entertained, against the protest of the British consul, in the absence of special circumstances, such as a clear deviation from the voyage described in the articles, cruelty, or the breaking up of the voyage, although the court may doubt the validity of the articles.

[Cited in The Pawashick, Case No. 10,851; The Carolina, 14 Fed. 426; The Lilian M. Vigus, Case No. 8,346; The Belgenland, 114 U. S. 364, 5 Sup. Ct. 864.]

In admiralty. Libel by the crew of the British ship Becherdass Ambaidass, alleging that they shipped at Liverpool in November, 1869, for a voyage to the East Indies, and thence to Boston; that the ship arrived in safety at this port in February, 1871, where the libellants' services terminated, and they became entitled to their wages as fully stated in their schedule. H. B. M. acting consul at Boston protested against the court taking jurisdiction of this cause, for the reasons that the libellants signed shipping articles in a usual form approved and used in the government shipping offices, and for a voyage not yet ended; that by the merchant shipping act of Great Britain, seamen are not permitted to sue in foreign ports unless duly discharged there, or so ill-treated as to be put in fear of their lives; that neither alternative applies to these libellants, and that it will be for the advantage of both parties to remit them to their home tribunals. The master by his answer reiterates the same grounds of objection, and adds a description of the voyage from the articles, as follows: "From Liverpool to Bombay, and any ports and places in the Indian, Pacific, and Atlantic Oceans, and China and Eastern seas, thence to a port for orders, and to the continent if required, and back to a port of final discharge in the United Kingdom, term not to exceed three years." The shipping articles on inspection agreed with the master's answer, and the libellants admitted that their description of the voyage in

---

[1] [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

the libel was not the true one, and prayed leave to amend by alleging that they were brought to Boston against their will. No objection was made to allowing such an amendment; but none such was made and sworn to.

G. O. Shattuck and O. W. Holmes, Jr., for claimant.

C. G. Thomas, for libellants.

LOWELL, District Judge. The law is well settled in England and America, that courts of admiralty have jurisdiction of suits by foreign seamen for their wages against a foreign ship, or her master or owners who are found within the territorial limits of the jurisdiction of the court. As early as 1795, Judge Peters thus stated his practice: "I have avoided taking cognizance, as much as possible, of disputes in which foreign ships and seamen are concerned. I have in general left them to settle their differences before their own tribunals. On several occasions I have seen it a part of the contract that the mariners should not sue in any other than their own courts; and I consider such a contract lawful," &c. He adds, that where the voyage is ended or broken up here, and no treaty or compact prescribes the mode of proceeding, he had permitted such suits to be brought: The Catharina, [Case No. 13,949.] He makes a very similar statement in The Forsoket, [Id. 17,682.] And there is no substantial change since that time. See The Jerusalem, [Id. 7,293;] Taylor v. Carryl, 20 How. [61 U. S.] 611, per Taney, C. J.; The Maggie Hammond, 9 Wall. [76 U. S.] 452, per Clifford, J.

These three cases do not decide the very point, but they contain dicta of great weight, and the decisions are in conformity with them: Patch v. Marshall, [Case No. 10,793;] The Gazelle, [Id. 5,289;] The Havana, [Id. 6,226;] Davis v. Leslie, [Id. 3,639;] Gonzales v. Minor, [Id. 5,530.] And there are many similar cases in which the rule is shown to be that the admiralty court has jurisdiction, but has a discretion whether to exercise it or not. It is not possible, of course, to lay down a precise rule to govern even the sound and judicial discretion of a court in future cases. Those in which actions have been maintained, against objection by the defendants or claimants (leaving out of view for the present the protest of the consul or minister), are where the voyage ends here by its own terms, and the wages are due here; where it has been wholly broken up by a sale of the ship, whether voluntarily or under legal process; where the ship is so unseaworthy that the crew are not bound to go in her; where they have been forced to leave her by the cruelty of the master.

It has been doubted whether a seaman discharged here by his own consent, should be permitted to sue, and whether a deviation by the master would be good ground for taking jurisdiction. On this last point, see Moran v. Baudin, [Case No. 9,785,] The St. Oloff, [Id. 17,357,] for, and Davis v. Leslie, [Id. 3,639,] and Bucker v. Klorkgeter, [Id. 2,083,] against, suits being sustained, the latter being dicta by Judge Betts, in which he expresses the opinion that the cases in Pet. Adm. [Cases Nos. 9,785 and 17,357] are not well decided. His ground is, that the very question of deviation may present all the difficulties of ascertaining the foreign law and applying it to the contract that induce the courts to decline the jurisdiction of questions arising during the course of a still unfinished voyage. My own opinion is, that a plain departure from an admitted voyage absolves the crew from their engagement by the general maritime law, and authorizes them to leave the vessel at any port where the only inconvenience to the master will arise from the necessity of hiring a new crew, even at higher wages; and that the decision in the former of the two cases cited from 2 Pet. Adm. [Moran v. Baudin, supra,] where it is shown that the crew had been taken on voyages they had never agreed for, was clearly right. Such seems to be the opinion of Mr. Parsons, 2 Pars. Shipp. 227, and Judge Betts's dicta must be taken, not as announcing any general rule, but rather as suggesting important exceptions to a sound rule. There are such exceptions no doubt to any rule that may be attempted to be made. A seaman discharged here may yet have bound himself by a valid contract not to sue here; or we may be bound by treaty not to entertain the suit; or an offer may be made to return destitute seamen to their home, which the court may think they ought to accept, &c. Subject to such exceptions, I consider deviation may be a ground for discharging the crew and ordering their wages to be paid to them, and this upon plain grounds of justice of universal authority.

This is not a case of deviation, strictly so called. The crew in their sworn libel say they were to come to Boston, and that the voyage was to end here. It is admitted now that the voyage was not to end here, and it is said, though not verified by oath, that they were brought here against their will. If this were so, the men must certainly have known it when they filed their libel, and should have alleged it, so as to put it in issue. As the case stands, I cannot take this fact for granted. The voyage described in the articles is broad enough to include Boston within its terms, and the contract seems to have been fully read and explained to the crew, and I understand the real objection relied on by the libellants is, that the articles are void for uncertainty. That is a point which has often arisen in this court; and, so far as our own statute is concerned, it is settled that such a description is too vague. This is not denied by the claimant, nor does he hesitate to admit that the decisions of the high court of admiralty, so far as any such have been reported, seem to

agree very nearly with the American cases; still he insists that I cannot know the English law, and that he ought to have the right to take evidence in England concerning the present law and practice there, if I take jurisdiction at all.

Besides these considerations, there is the protest of H. B. M. acting consul, which affirms the validity of the articles, and protests that the court ought not to take jurisdiction. Several of the authorities above cited refer to the consent or dissent of the representative of the foreign government as being an important fact, but precisely what weight should be given to it is not defined. Judge Sprague, in Hay v. The Bloomer, [Case No. 6,255,] cited in 2 Pars. Shipp. 229, note 2, says: "The usual course in the case of a libel by a foreign seaman against his vessel, is to direct the clerk to inform the consul of the government of the pendency of the suit, that he may take such notice of it as he thinks proper; and unless there were strong circumstances in the case, the court would not proceed in rem against a foreign vessel, without the assent of the commercial representative here of the foreign government of the country where she belonged." What circumstances would be strong enough to induce action, notwithstanding such a protest, is not stated. Judge Peters appears to have found such circumstances in The St. Oloff, [Case No. 17,357,] where there had been both cruelty and deviation. So did Mr. Justice Curtis, in Patch v. Marshall, [Id. 10,-793,] where the defendant appeared to be domiciled in Massachusetts, and the voyage was ended there. In a late case in England it has been decided in conformity with the practice in both countries, that the protest of the foreign consul could not bar the jurisdiction; but that it ought to be respectfully considered and weighed together with the other facts and circumstances upon which the sound discretion of the court must be exercised: The Nina, L. R. 2 P. C. 38. See, too, The Golubchick, 1 W. Rob. Adm. 143; The Milford, Swab. 362; The Herzogin Marie, 1 Lush. 292.

The practice pointed out by Judge Sprague, which agrees entirely with the English practice as shown by these cases, was not followed in this case, and the consul was not notified before the warrant issued; and for the sufficient reason that the libel says nothing about the vessel being foreign, but states simply the case of a voyage ending here, the ship earning freight, and the seamen entitled to their wages; and not only so, but it invokes the immediate action of the court on the ground that the ship was about to proceed to sea within ten days, an allegation made under the statute of [July 20,] 1790, (1 Stat. 134,) which is wholly inapplicable to the case of a British crew shipped in England, as these men are now admitted to have been. A libel so framed in total disregard of the truth of the case is an abuse of the process of the court, and the costs which have resulted from it will justly fall on the libellants if it turns out that no warrant ought to have been granted.

And my opinion is, that justice does not require me to take jurisdiction against the protest of the consul. That objection has weight as showing the opinion of the person who is intrusted with the care of British seamen, that there is no such hardship in this case as required the libellants to be paid here rather than at home. His opinion of the law too must have some weight, because he is in a position to know and act upon it often. Nor can I find in the case any of the strong circumstances such as Judge Sprague refers to, as requiring the protest to be disregarded. The libellants do not appear to have been brought here against their will, and the master professes himself ready to carry them home. The time for which they shipped has not run out, and no reason is given, excepting what under the circumstances of this case may fairly be called the technical one, that their contract is null. It is the policy of all maritime countries to discourage the discharge of their seamen in foreign ports, and if the master undertook to discharge these men here against their will, he would be guilty of a misdemeanor by the terms of the [British] merchant shipping act [of 1854, (17 & 18 Vict. c. 104, §§ 206, 207.)] They say it is in their election to be discharged. If this be so, yet there is no reason given excepting the strict right, and that is precisely what a court of admiralty does not feel bound to enforce without further reasons. Reserving, therefore, an opinion upon any state of facts not now before me, I must say that I do not find here any good cause for taking jurisdiction.

One of the difficulties in the operation of the well-established course of practice is, that we are obliged to try the case before we can ascertain whether it ought to be tried or not, and I find that difficulty somewhat embarrassing here, for the facts may not have been fully developed in the short hearing already had. I shall retain the libel until the sincerity of the master's professed readiness to take back the men has been ascertained; but if the facts turn out to be as they now appear, I shall not exercise jurisdiction further. Whether I shall do so in any event, unless one or more of the crew shall appear to have been discharged with the master's consent, I do not decide. But in such a case as I have sometimes seen, of a master inducing a crew to desert, and then setting up the act in bar of their wages, his consent to discharge them might be presumed.

NOTE. [from original report.] In the case of The Robert Ritson, [Case No. 11,895,] decided soon after The Becherdass Ambaidass, it was admitted that the libellants had left the port before the ship, which afterwards proceeded to complete the voyage described in the articles. There was, therefore, no offer to take back the men, although the master had been

willing to do so until they went away. The facts were in other respects like those in the principal case, and a similar protest was filed by the acting consul. The court dismissed the libel.