## THE BAKER.

(District Court, E. D. New York. November 25, 1907.)

ADMIRALTY—JURISDICTION OF SUIT AGAINST FOREIGN VESSEL—TREATY WITH GERMANY.

The provision of the treaty of December 11, 1871 (17 Stat. 928), between the German Empire and the United States, that the consular agents of either country "shall have exclusive charge of the internal order of the merchant vessels of their nation and shall have the exclusive power to take cognizance of, and to determine differences of every kind which

may arise, either at sea or in port, between the captains, officers, and crews," does not include a claim by a seaman against a vessel or owner for a tort, so as to exclude the jurisdiction of a United States court of admiralty of a suit on such a claim against a German vessel.

[Ed. Note.—Jurisdiction of torts, see note to Campbell v. H. Hackfeld & Co., 62 C. C. A. 279.]

In Admiralty. On exception to libel.

Martin T. Manton, for libelant.
Wheeler, Cortis & Haight, for claimant.

CHATFIELD, District Judge. The libelant, who is not an American citizen, was injured, by falling, upon a tramp steamer flying the German flag and admittedly of German registration, while the vessel was upon the high seas. Upon the arrival of the vessel at the port of New York, the libelant, in the District Court of the United States for this district, libeled the steamer, alleging negligence on the part of the owners, agents, servants, and crew of the vessel, and claiming the sum of $15,000 damages. Process was issued and executed upon the vessel, and claimant's bond has been given, so that the movements of the vessel have not been interfered with.

A preliminary question of jurisdiction is raised in the form of exceptions to the libel, which exceptions are stated as follows:

"In that the alleged cause of action set forth in the libel is not within the jurisdiction of the United States or this honorable court, by reason of the treaty between the United States and the German Empire of December 11, 1871, which vests the exclusive power to take cognizance thereof in the German consular department."

The treaty between the United States and Germany contains the following clause:

"Consuls general, consuls, vice-consuls, or consular agents shall have exclusive charge of the internal order of the merchant vessels of their nation, and shall have the exclusive power to take cognizance of and to determine differences of every kind which may arise, either at sea or in port, between the captains, officers, and crews, and especially in reference to wages and the execution of mutual contracts. Neither any court or authority shall, on any pretext, interfere in these differences, except in cases where the differences on board ships are of a nature to disturb the peace and public order in port, or on shore, or when persons other than the officers and crew of the vessel are parties to the disturbance." 17 Stat. 928.

It is difficult to see how the framers of this treaty could have used the language quoted with the intention of including suits brought against the owners of a vessel or against the vessel itself upon the ground of negligence, inasmuch as such a cause of action is not a difference between the captain, officers, or any member of the crew. An action for negligence might bring into question contradictions or differences in the statements of occurrences by the various officers or members of the crew concerned in the transaction; but the creation of a consular court, with power to try negligence suits, would be a matter of so much importance that it would seem to have been necessarily in the minds of the framers of the treaty. They would just as certainly have stated specifically the jurisdiction of a consular

court with reference to such causes of action, if that jurisdiction had been intentionally conferred.

The attention of the court has been called to several cases, and some of the principles covered by these cases should be referred to. In the case of The Burchard, 42 Fed. 608, jurisdiction in the District Court of the United States was refused, and a libel for wages dismissed, following the authority of The Elwine Kreplin, 9 Blatchf. 439, Fed. Cas. No. 4,426, upon the ground that the German consul had jurisdiction under the treaty of December 11, 1871, in force between the United States and Germany. This is the same treaty now in force, and under which the exceptions have been filed in this case.

But it is not necessary to do more than state the proposition that a dispute as to wages would naturally be called a matter between the captain and members of the crew, while an action for negligence against the vessel, being founded upon tort, may or may not be confined to acts and matters which have occurred between the injured party and the officers of the ship or the agents of the owners. It might be noted in passing that the treaty has the phrase "and especially in reference to wages and the execution of mutual contracts." No affirmative relief is asked against the captain or other officers in the action for tort. If a dispute arises as to what actually occurred, that is a question of evidence, and not such a matter of substantial rights as to be legally termed a "dispute or difference," in the sense of meaning a case at law or a claim to be litigated.

In the same way The Bound Brook (D. C.) 146 Fed. 160, had to do with a hearing with relation to wages. But in the case of The Bound Brook, supra, the court, on page 161 of 146 Fed., in its opinion, uses the following extremely pertinent language:

"Is the case thus presented one of which the court may take jurisdiction, or is it one of which the German consul has exclusive cognizance under the treaty? Inasmuch as the libelants are none of them citizens of the United States, and the vessel libeled is foreign, the court is not bound to take jurisdiction. It will use its discretion whether to exercise jurisdiction or not. Where, as in this case, the voyage is ended, jurisdiction is usually exercised, in the absence of reasons to the contrary; and it may be exercised even against the protest of the consul. Such a protest, however, is always an important circumstance for consideration; but, if there are treaty stipulations with regard to the consul's right to adjudge controversies arising between the master and crew, such stipulations are to be fairly and faithfully observed. The Belgenland, 114 U. S. 355, 364, 5 Sup. Ct. 860, 29 L. Ed. 152; The Becherdass Ambaidass, 1 Lowell, 569, 572, 573, Fed. Cas. No. 1,203; The Pawashick, 2 Lowell, 142, Fed. Cas. No. 10,851."

In the case of The Welhaven (D. C.) 55 Fed. 80, the dispute was again as to wages, and the putting of the libelant on shore in irons, while the case turned on the opinion in The Burchard, supra; the court saying that the two cases were alike. It has been settled by the case of The Belgenland, 114 U. S. 355, 5 Sup. Ct. 860, 29 L. Ed. 152, that the maritime jurisdiction of the District Courts of the United States will attach where the ship comes within the dominion of the court, even in the case of a foreign vessel, and with relation to the claims of citizens of a nation other than that of the vessel or of the place in which the court is held. In that case Mr. Justice Bradley says,

on page 363 of 114 U. S., page 864 of 5 Sup. Ct. (29 L. Ed. 152), in the opinion:

"For circumstances often exist which render it inexpedient for the court to take jurisdiction of controversies between foreigners in cases not arising in the country of the forum. * * * The cases of foreign seamen suing for wages, or because of ill treatment, are often in this category. * * * Where the voyage is ended, or the seamen have been dismissed or treated with great cruelty, it will entertain jurisdiction even against the protest of the consul [citing a number of cases]. Of course, if any treaty stipulations exist between the United States and the country to which a foreign ship belongs with regard to the right of the consul of that country to adjudge controversies arising between the master and crew, or other matters occurring on the ship exclusively subject to the foreign law, such stipulations should be fairly and faithfully observed."

Further on in the same opinion the court says that, unless the case falls within the exceptions—that is, is covered by the terms of the treaty—the courts have jurisdiction, and that they will exercise it if there is special reason for so doing.

It is unnecessary to consider here the effect of the laws of Germany, which must be taken as the basis of determining whether a recovery can be had, or the laws of the United States, which must as well be complied with before the libelant can recover. The Lamington (D. C.) 87 Fed. 752; The Belgenland, supra. It is impossible now to discuss at length whether the court should retain jurisdiction of this case in the exercise of that discretion which the court feels is within its jurisdiction. The principles of the exercise of such discretion are stated in the case of Camille v. Couch (D. C.) 40 Fed. 176, where the consul had already effected a settlement upon the question of wages and had gone into the matters under dispute, and the payment of wages had apparently been in the nature of an adjustment of all differences. In that case the court refused to entertain jurisdiction, although stating that it had jurisdiction if it saw fit to exercise it; and in the case at bar it may appear, upon a full presentation of the situation, that circumstances exist which would impel this court to exercise its discretion against the libelant and refuse him the privilege of litigating his claim in the courts of this district.

The exceptions under discussion, however, are based merely upon the proposition that the German consul has exclusive jurisdiction. The allegations of the libel set forth that the libelant had been injured to such an extent that he could not pursue his former occupation and would continue to suffer great bodily pain. Under those circumstances he remained within the jurisdiction of this court and secured the service of process upon the vessel before she left the jurisdiction. Her owners have given a bond to release the vessel, and upon the facts appearing the sole proposition upon which the exceptions are based must be decided against the claimant, without finally precluding the court from exercising its discretion in such a way as it may determine upon a further knowledge of the facts.

The present exceptions will be overruled, and the claimant will be directed to answer.