## THE NAVARINO.

(District Court, E. D. New York. June 25, 1925.)

**1. Seamen ⊂⟩3—Injury to seaman in American port on foreign vessel through unseaworthiness governed by American law.**

Law of the United States governs, where injury to foreign seaman on foreign vessel from its unseaworthiness, resulting from negligence of its owners, occurs in an American port.

**2. Seamen ⊂⟩29(1)—Suit in rem for injury through unseaworthiness of vessel maintainable, though case be governed by British law.**

Even if British law governs injury in American port to seaman on British vessel from its

unseaworthiness, suit therefor in rem against the vessel is maintainable in United States court; a maritime lien existing under British as well as American law in favor of seaman injured by unseaworthiness of vessel.

**3. Seamen ⊂⟩29(2)—Vessel held unseaworthy by reason of defective block used during cleaning of smoke box tubes.**

Under facts, vessel *held* unseaworthy by reason of defective block used during cleaning of smoke box tubes, whereby fireman was injured.

**4. Seamen ⊂⟩29(4) — Fireman held not responsible for selection of defective block for cleaning smoke box tubes.**

Fireman on steamer injured by a defective block used in cleaning smoke box tubes *held* not responsible for its selection, though there were others in good condition, where it was already set up.

In Admiralty. Suit in rem by James Kirby against the British steamship Navarino, her engines, etc.; James F. Crichton, claimant. Decree for libelant.

Kelly & Blinn, of New York City (Eugene E. Kelly, of New York City, of counsel), for libelant.

Kirlin, Woolsey, Campbell, Hickox & Keating, of New York City (Edward B. Long and Vernon S. Jones, both of New York City, of counsel), for claimant.

CAMPBELL, District Judge. This is a suit brought in admiralty to recover damages for alleged personal injuries in rem against the steamship Navarino by a member of her crew. The steamship Navarino was a British vessel flying the British flag, and the libelant is a British subject and signed articles and shipped upon said vessel in a British port.

The alleged injuries in question were received on board said vessel while she was in port in this district. The libelant bases his right to recover upon the unseaworthiness of the vessel and its appliances. The libelant does not make any claim under section 33 of the Act of June 5, 1920 (Comp. St. Ann. Supp. 1923, § 8337a), amending section 20 of the Act of March 4, 1915, commonly known as the "Jones Act." The answer admits the employment of the libelant, but denies all the other material allegations contained in the libel.

On the trial claimant was allowed to amend his answer, so as to plead that at all the times mentioned in the libel, the steamship Navarino was a British vessel and flew the British flag, and that during all the times mentioned in the libel the libelant was a British subject, and was also allowed to amend his answer so as to plead the British

law and the British Workmen's Compensation Act. The proof of the British law and decisions was not made on the trial, but was left open to be furnished by stipulation of the proctors for the respective parties. The stipulation as filed does not expressly state the law and decisions, but waives formal proof of the British law, and stipulates that either party may cite, and the court accept, decisions of the British courts, British statutes, or quotations from recognized British and American text-books.

Claimant contends that the rights of the parties are to be measured by the British law, the law of the flag, and that under the British law the libelant has not any cause of action in rem, and in fact has not any cause of action, and that his sole remedy is to be obtained under the British Workmen's Compensation Act. If claimant's contention should be sustained, there would remain nothing further for consideration by this court.

The proctors for the respective parties have furnished able and instructive briefs on the questions involved in claimant's contention. There is no proof before me that this subject is covered by the provisions of any treaty between this country and the British Empire, and it further appears that the relations between the libelant and the ship were severed after the accident and before the trial. The injury was received in an American port, and involves an alleged tort suffered by the libelant as a result of the negligence of the owners of the vessel in failing to maintain the vessel in a seaworthy condition.

. It is not necessary for me to determine in the case at bar whether this court is bound to exercise jurisdiction, or that jurisdiction is discretionary, because the question was presented at the opening of the trial and the court assumed jurisdiction. This is not a controversy which relates to differences between the master and the crew of the ship, involving discipline, the ordinary treatment of the crew, the food supply, or the payment of their wages, which, except when the latter is affected by the Seamen's Act (38 Stat. 1164), should be left to the consul of the country whose citizens are thus involved, but involves an alleged tort suffered by the libelant within the territorial waters of the United States. The Apurimac, 1925, A. M. C. 604, 7 F.(2d) 741.

[1] It does not seem to me that it is necessary for this court to determine whether the libelant could recover under the British law in this case, either in rem or in perso-

nam, nor whether he had a right of recovery under the British Workmen's Compensation Act, which is not even shown to be an exclusive remedy, because in my opinion the law of the United States is applicable in the case at bar; the injury having been suffered in an American port. The Scotland, 105 U. S. 24, 26 L. Ed. 1001; The Hanna Nielsen (C. C. A.) 273 F. 171; The Brantford City (D. C.) 29 F. 373; The Apurimac, supra. None of the cases cited by the claimant under the Jones Act have any application, because under that law the American law follows American ships into foreign waters, but that does not apply to foreign ships in American waters.

[2] If, however, I am in error in holding that the law of this country applies, and the British law is controlling, then it seems to me that the libelant is entitled to maintain this suit and to recover under that law, if unseaworthiness of the vessel or its appliances be shown. The British cases cited by claimant to show that the libelant had not a right of action in rem against the ship seem to me to have no application, in that they fall into two classes—those that are obsolete because decided before the enactment of section 5 of the Merchant Shipping Act of 1876 (30 and 40 Vict. c. 80), and those that apply to the British Convention Act, conferring jurisdiction in rem upon British courts of admiralty for damage upon "by the ship."

The Egyptian Monarch (D. C.) 36 F. 775, and The Lamington (D. C.) 87 F. 752, cited by claimant, are not in point, as in The Egyptian Monarch the accident occurred on an English ship while in British territorial waters, and in The Lamington the accident occurred on an English ship on the high seas.

The duty of the owner, master, and agent, to use all reasonable means to insure the seaworthiness of the ship is provided for in section 5 of the Merchant Shipping Act, supra. Our courts have held, both in dicta and in expression, where the point has been raised, that a maritime lien exists under the British law and American law in favor of a seaman for damages suffered through the unseaworthiness of the vessel. The Imperator (C. C. A.) 288 F. 372; The Osceola, 189 U. S. 158, 175, 23 S. Ct. 483, 47 L. Ed. 760; Carlisle Packing Co. v. Sandanger, 259 U. S. 255, 258, 259, 42 S. Ct. 475, 66 L. Ed. 927. Seaworthiness of a vessel has been defined by the British courts to mean "that she shall be in a fit state as to repairs, equipment, and crew, and in all other respects, to encounter ordinary perils of the voyage." Hedley v. Pinkney & Sons Steamship Com-

pany, Limited, 7 Asp. M. L. C. 485 (1894).

While many sections of the British Workmen's Compensation Act were cited by the proctors for the respective parties, there was no citation of any portion of the act, nor of the decision of any British court which made it an exclusive remedy. On the contrary, it appears that such act does not furnish an exclusive remedy, because in Monaghan v. W. H. Rhodes & Sons [1920] L. R. 89, p. 370, a plaintiff was awarded £600 for damages by reason of a fall while working as a stevedore on board a British ship.

The case of Anderson v. Rayner [1902] K. B. 589, is not in my opinion authority for the claimant's contention that either the owner or the steamship Navarino was under no obligation to Kirby, other than to return Kirby to his native country, and this is more clearly shown in the headnote to McDermott v. S. S. Tintoretto [1910] 27 T. L. R. 149. It thus appears that the libelant has a right to recover against the ship, if her unseaworthiness be shown.

[3] We are thus brought to a consideration of the merits of the case. The libelant was a fireman or trimmer of the ship, and with two other firemen or trimmers, William Simpson and William Hogg Mann, on the day in question was ordered by the second assistant engineer to clean the smoke box tubes. There were three boilers, and over each three tubes, located one to port, one over the center, and one to starboard of each boiler, respectively. Each of these tubes has an opening into the stoke hole, with a door covering such opening hinged at the top and secured at the bottom with dogs, which are turned when it is desired to open the same. .

The doors consist of two steel plates, an inner and outer one, and are about 4 feet in width by 3½ inches in length. The second assistant engineer says the doors weigh about 270 to 280 pounds each, and the libelant and his witnesses say their weight is 900 to 1,100 pounds each. These doors are about 10 feet above the deck plates of the stoke hole, which extends about 10 to 11 feet aft from the boilers to a steel bulkhead, and about 42 feet across from one side of the ship to the other.

The openings are too high for men standing on the plates to sponge out the smoke tubes, and therefore two iron bars, each about 12 feet long, are fastened with a hook and ring on the bulkhead, and another part of the bar goes through the furnace for a support for a plank to stand on; this plank being about 5 feet above the deck plates.

The doors must not only be opened, but kept open during the sponging, and this is accomplished by attaching to an eyebolt in the center of the lower part of the door a chain which is carried to the deck plates through a block hooked by an open hook to an eyebolt in the steel bulkhead immediately in front of the center of the door, but higher up, being about 15 feet above the deck plates and pulling on said chain. There were nine of these doors, and the men had been working at sponging the tubes all day, having begun on the port side and sponged eight of them.

There were blocks and chains in front of seven of these doors, and a chain only in front of one of them. When they came to the starboard door of the starboard boiler there was no block, so Simpson went up and removed the block in front of the center door of the center boiler and hooked it up on the eyebolt on the bulkhead in front of the door to be opened, and the chain was made fast to the door.

The libelant was then on the iron bars in front of the tube and his head was about 4 feet 8 inches from the block. Simpson and Mann on the deck plates, assisted by the libelant standing on the bars, then pulled the chain to raise that door, whereupon the hook just above the block broke, and the libelant was hit on the back, falling down from the bars on Simpson and Mann, and rolling on the coal. Proper medical attention was given to libelant, and he was paid off and later returned to the port from which he had shipped.

The weight which can be given to the testimony of Mann is weakened, because he was clearly in error when he said the block which broke was given to them by the second assistant engineer just before the accident, but the libelant says he was hit in the back by the hook, and Simpson says it was the block. This is apparently a small detail, but one of moment when you come to a consideration of the question of damages, because much less injury would be caused by being hit with the hook than with the block with the chain through it.

The block was not as originally made, but had been, as I find, improperly repaired. As originally made, the base of the hook had been inserted through a hole in the top of the block and riveted to the underside of the top of the block. An attempt had been made to repair a partial break in the hook and covering it up by welding material around it, and this must have been done before the voyage in question, as the evidence shows no repairs were made to the hook on this voy-

age. The proper way would' have been to cut out the old hook and insert and rivet in a new one.

The danger in using this hook was not apparent to the workmen, and in fact they had already safely used it in cleaning the center tube of the center boiler. Libelant contends that a separate block and chain should have been provided for each tube, but such contention is not sustained. Claimant contends that, according to custom, but three blocks and chains were required; but the proof of custom was insufficient to· sustain that contention.

[4] Claimant also contends that, inasmuch as there were other blocks with hooks that were in good condition, the libelant was responsible for the selection of the one used; but I cannot agree with that contention because, if there had been a number of blocks not set up, and the libelant had made selection among them and taken an improper block, there might be something to that contention, but that can have no application in the case at bar where the blocks and chains were made fast before 'the work commenced, and they were thus the appliances with which the libelant was expected to work. No liability can be imposed on libelant because the number of blocks provided was less than the number of tubes, therefore requiring the shifting of one already used. I therefore find that the ship and her appliances were not seaworthy at the commencement of the voyage, and remained unseaworthy until the time of the injury to the libelant, in that the hook on the block in question was not fit for the service required of it, which clearly appears from an inspection of the block and hook.

The question of the proper amount of damages to be awarded, depending as it does solely upon the testimony of libelant and his witnesses, is a difficult one to solve. Libelant was examined shortly after the accident, and the physician who made that examination placed one year as the length of time that libelant would be' incapacitated. He was examined on May 12, 1924, and again in Scotland on September 22, 1924, and still found to be suffering from his injury; but no time was stated by the examining physician as to the probable duration of the injury, although from the physician's statement he would seem to have improved considerably. Nothing was offered to show his condition at the time of the trial, and there is no evidence that the injury is permanent.

Libelant was in receipt of a wage of £9.

10 s. per month, and was treated and maintained in this country until April 30, 1924, when he was returned to Scotland, arriving on May 9, 1925. Libelant undoubtedly endured some pain and suffering.

A decree may be entered in favor of the libelant for $1,200 and costs.