## THE HANNA NIELSEN.

District Court, W. D. Washington, S. D. April 24, 1928.

### No. 4336.

1. Admiralty ⊕⇒5—Libel by Norwegian subject against Norwegian vessel for injuries sustained at United States port, due to unseaworthiness, held within federal court's jurisdiction.

Federal District Court *held* to have jurisdiction of libel by Norwegian subject filed against Norwegian vessel, though libelant entered service of ship at Norwegian port and owner was Norwegian corporation, where recovery was sought for injuries suffered to libelant as seaman while vessel was taking cargo at United States port and was alleged to have been caused by the unseaworthiness of the vessel; such injuries being considered as coming within jurisdiction of court since enactment of Treaty with Norway and Sweden of July 4, 1827, art. 13 (8 Stat. 352).

2. Statutes ⊕⇒281—Foreign law must be alleged and proved.

Foreign law in any case is a question of fact, to be alleged and proved.

3. Seamen ⊕⇒3—Norwegian law, if enforceable, would be applied in libel by Norwegian seaman against Norwegian vessel for injuries suffered at American port, due to alleged unseaworthiness.

Norwegian law, if enforceable by court, would be applied in libel proceeding by Norwegian subject against Norwegian vessel for injuries suffered while taking cargo at United States port, and alleged to have been due to unseaworthiness of vessel.

4. Evidence ⊕⇒81—Statutes ⊕⇒290—Norwegian law was presumed identical with maritime law of United States, and burden of showing contrary was upon claimant, in libel by Norwegian seaman for injuries sustained on Norwegian vessel, due to unseaworthiness.

In libel by Norwegian seaman against Norwegian vessel having Norwegian owner for in-

juries suffered at United States port alleged to be due to unseaworthiness, law of Norway was presumed to be the same as the general maritime law recognized in United States, and burden of showing difference in Norwegian law was on claimant, and not on libelant.

In Admiralty. Libel by Asbjorn Utne, by Carl J. Smith, his guardian ad litem, against the steamship Hanna Nielsen, her engines, etc., and Hanna Nielsen A/S, claimant, in which claimant filed exceptions to the libel. Exceptions overruled.

Christofer Jacobsen, of Seattle, Wash., for libelant.

Bogle, Merritt & Bogle, of Seattle, Wash., for claimant.

CUSHMAN, District Judge. The libel is one in rem to recover damages for personal injuries, in which it is alleged: Libelant is an infant, 15 years of age, and was a sailor on the respondent vessel at the time he was hurt. The injury is alleged to have been suffered while the vessel was taking cargo at Port Angeles, Wash., and to have been caused by the unseaworthiness of the vessel, in that a step inside No. 5 hatch was bent upwards in the middle and formed a triangle, instead of a straight line, whereby it failed to provide the necessary foothold; that such condition of the step made it practically impossible to use the same without great danger of slipping therefrom by any one using it, which libelant at the time of the injury was doing, in setting out lights throughout the vessel under an order of one of its officers.

Claimant has excepted to the libel on the ground that libelant has no legal capacity to sue; that the claim and cause of action of libelant, if any, are created and governed by the maritime laws of the Kingdom of Norway, which have not been set forth in the libel. Claimant also suggests that libelant is a Norwegian seaman; that the vessel is a Norwegian vessel, flying the Norwegian flag. Upon which suggestion respondent and claimant except to the libel, and request the court to decline jurisdiction. The affidavit of one of the attorneys for the claimant, by way of exception, alleges that libelant entered the service of the ship at a Norwegian port, where his contract for service was signed. The respondent vessel has been released upon claimant's bond.

Upon the argument of the exceptions it was admitted that libelant is a Norwegian subject; that respondent is a Norwegian vessel, flying the flag of that country; and that claimant is a Norwegian corporation.

Libelant cites: City of Atlanta (D. C.) 17 F.(2d) 308, 1924 A. M. C. 1305; The Policastria (D. C.) 11 F.(2d) 659, 1926 A. M. C. 921; The Apurimac (C. C. A.) 12 F.(2d) 500, 1926 A. M. C. 703; Ongaro v. Twohy, 49 Wash. 93, 94 P. 916; Acres v. Frederick & Nelson, 79 Wash. 402, 140 P. 370; Hughes on Admiralty (2d Ed.) p. 242; The Navarino (D. C.) 7 F.(2d) 743, 1925 A. M. C. 1062; Cunard S. S. Co. v. Mellon, 262 U. S. 100, 43 S. Ct. 504, 67 L. Ed. 894, 27 A. L. R. 1306; The Troop (D. C.) 118 F. 769; Panama R. Co. v. Napier Shipping Co., 166 U. S. 285, 17 S. Ct. 572, 41 L. Ed. 1004; The Belgenland, 114 U. S. 355, 5 S. Ct. 860, 29 L. Ed. 152.

Claimant cites: The Falls of Keltie (D. C.) 114 F. 357; Wenzler v. Robin Line Steamship Co. (D. C.) 277 F. 812; The Inland (Bennet, Adm'x, v. Connelley) 122 Misc. Rep. 149, 202 N. Y. S. 568, 1924 A. M. C. 1454; Clark v. Montezuma Trans. Co., 217 App. Div. 172, 216 N. Y. S. 295, 1926 A. M. C. 954; Primero Muti, Adm'x, v. Hoey and Salvatore Sabbatino, etc., 221 App. Div. 688, 224 N. Y. S. 662, 1928 A. M. C. 79; International Stevedoring Co. v. Haverty, 272 U. S. 50, 47 S. Ct. 19, 71 L. Ed. 157, 1926 A. M. C. 1638; In re Ross, 140 U. S. 453, 473, 475, 11 S. Ct. 897, 35 L. Ed. 581; The Pinar Del Rio (C. C. A.) 16 F.(2d) 984, 1927 A. M. C. 268; The Hanna Nielsen (C. C. A.) 273 F. 173; Rainey v. New York & P. S. S. Co. (C. C. A.) 216 F. 449, 454, L. R. A. 1916A, 1149; The Wildenhus, 120 U. S. 1; 7 S. Ct. 383, 30 L. Ed. 565; In re Rodgers, 150 U. S. 249, 14 S. Ct. 109, 37 L. Ed. 1071; Thompson Towing & Wrecking Ass'n v. McGregor (C. C. A.) 207 F. 209; The Sarpfos, 1925 A. M. C. 137; The Cuzco (D. C.) 225 F. 169; Geraci, Adm'r, v. Cunard S. S. Co., 120 Misc. Rep. 607, 200 N. Y. S. 132, 1923 A. M. C. 976; United States Shipping Board, etc., v. Greenwald (C. C. A.) 16 F.(2d) 948; The Falco (D. C.) 15 F.(2d) 604; affd. (C. C. A.) 20 F.(2d) 363; Cuba R. R. Co. v. Crosby, 222 U. S. 473, 32 S. Ct. 132, 56 L. Ed. 274, 38 L. R. A. (N. S.) 40.; Standard Oil Co. of New York v. Tampico Nav. Co. (D. C.) 21 F.(2d) 795; The Samnanger (D. C.) 298 F. 620; Panama Electric Ry. Co. v. Moyers (C. C. A.) 249 F. 19; The City of Atlanta (D. C.) 17 F.(2d) 308; Columbia-Knickerbocker Trust Co. v. Abbot (C. C. A.) 247 F. 833; Banco de Sonora v. Bankers' Mutual Casualty Co., 124 Iowa, 576, 100 N. W. 532.

[1] The general rule is that the District Court has jurisdiction of a controversy such

as the present is now made to appear. Panama R. R. Co. v. Napier Shipping Co., 166 U. S. 280, 284, 285, 17 S. Ct. 572, 41 L. Ed. 1004; The Troop (C. C. A.) 128 F. 856, affirming (D. C.) 118 F. 769; The Noddleburn (C. C.) 30 F. 142. While the case decided was one of collision upon the high seas, the court, in The Belgenland, 114 U. S. 355, 367, 5 S. Ct. 860, 865 (29 L. Ed. 152) quotes with approval the following statement of Dr. Lushington in the Johann Friederich, 1 Wm. Rob. 35:

" * * * 'All questions of collision are questions communis juris; but in case of mariners' wages, whoever engages voluntarily to serve on board a foreign ship, necessarily undertakes to be bound by the law of the country to which such ship belongs, and the legality of his claim must be tried by such law. One of the most important distinctions, therefore, respecting cases where both parties are foreigners is, whether the case be communis juris or not. * * * If these parties must wait until the vessel that has done the injury returned to its own country, their remedy might be altogether lost, for she might never return, and, if she did, there is no part of the world to which they might not be sent for their redress.' "

See, also, Heredia v. Davies (C. C. A.) 12 F.(2d) 500.

Article XIII of the Treaty of July 4, 1827, with Norway and Sweden, 8 Stat. at Large, p. 352, provides:

" * * * The consuls, vice consuls, or commercial agents, or the persons duly authorized to supply their places, shall have the right, as such, to sit as judges and arbitrators in such differences as may arise between the captains and crews of the vessels belonging to the nation whose interests are committed to their charge, without the interference of the local authorities, unless the conduct of the crews, or of the captain, should disturb the order or tranquillity of the country; or the said consuls, vice consuls, or commercial agents should require their assistance to cause their decisions to be carried into effect or supported. It is, however, understood, that this species of judgment, or arbitration shall not deprive the contending parties of the right they have to resort, on their return, to the judicial authority of their country."

Under this treaty, and that with Sweden of 1910 (37 Stat. 1479) it was held, in The Ester (D. C.) 190 F. 216, in a case similar to the present in many respects, that the court was without jurisdiction. In The Baker (D. C.) 157 F. 485, the court held that a similar provision in the treaty with Germany,

did not include such a claim as the present, so as to exclude the jurisdiction of a United States court. See, also, The Falco (C. C. A.) 20 F.(2d) 262.

In The Osceola, 189 U. S. 158, 175, 23 S. Ct. 483, 487 (47 L. Ed. 760), the court said:

" * * * It will be observed in these cases that a departure has been made from the continental codes in allowing an indemnity beyond the expense of maintenance and cure in cases arising from unseaworthiness. This departure originated in England in the Merchants' Shipping Act of 1876, above quoted, Couch v. Steel, 3 El. & Bl. 402, Hedley v. Pinkney & Co., 7 Asp. M. L. C. 135, 1894 App. Cas. 222, and in this country, in a general concensus of opinion among the Circuit and District Courts, that an exception should be made from the general principle before obtaining, in favor of seamen suffering injury through the unseaworthiness of the vessel. We are not disposed to disturb so wholesome a doctrine by any contrary decision of our own. * * * "

The treaty of 1827, antedating the recognition of the existence of the right to recover in such cases, it could not have been intended by the language quoted from article XIII, to include them.

[2] On account of the conclusion reached by the court it is not necessary to determine the law controlling libelant's right and respondent's liability. If the general maritime law as recognized in this country applies, no question is made as to the sufficiency of the libel. It may be assumed that the law of Norway, if of a nature to be enforced by the court, will be applied. In re Ross, 140 U. S. 453, 11 S. Ct. 897, 35 L. Ed. 581; Rainey v. New York & P. S. S. Co. (C. C. A.) 216 F. 449, L. R. A. 1916A, 1149; Wenzler v. Robin Line S. S. Co. (D. C.) 277 F. 812.

The following cases are not in point: In a prosecution for a serious offense the law of the port doubtless applies, where the prosecution is in the same country as the port. Wildenhus Case, 120 U. S. 1, 7 S. Ct. 383, 30 L. Ed. 565.

In United States v. Rodgers, 150 U. S. 249, 14 S. Ct. 109, 37 L. Ed. 1071, the prosecution was in a court of the United States for an offense on a vessel of the United States, committed within the "territorial limits of the Dominion of Canada." See, also, Cunard S. S. Co. v. Mellon, 262 U. S. 100, 43 S. Ct. 504, 67 L. Ed. 894, 27 A. L. R. 1306.

In The Hanna Nielsen (C. C. A.) 273 F. 171, the injury suffered was on a foreign

ship of one nation in the port of another foreign nation.

The cases of International Stevedoring Co., v. Haverty, 272 U. S. 50, 47 S. Ct. 19, 71 L. Ed. 157, and The Samnanger (D. C.) 298 F. 620, concern stevedores injured in American ports, and not injuries to ordinary seamen on a ship, both of the same foreign nation.

The Cuzco (D. C.) 225 F. 169, was the case of a stevedore injured, not in a port of the United States but in a port of British Columbia.

In The Navarino (D. C.) 7 F.(2d) 743, it was considered that there was no difference in the law of England and that of the United States, upon the question involved.

In The City of Atlanta (D. C.) 17 F.(2d) 308, the case was one of supplies furnished an American vessel in a Cuban port.

In Geraci, Administrator, v. Cunard S. S. Co., 120 Misc.Rep. 607, 200 N. Y. S. 132, 1923 A. M. C. 976, the seaman was killed upon a British ship, in the harbor of Havanna.

No statute shows an intent to make any other law applicable in such a case as the present than the general maritime law. There was such a statute considered by the court in Patterson v. Bark Eudora, 190 U. S. 169, 23 S. Ct. 821, 47 L. Ed. 1002.

The title of the Jones Act (41 Stat. 988) is: "An act to provide for the promotion and maintenance of the *American* merchant marine." (Italics those of this court.)

In Clark v. Montezuma Transp. Co., 217 App. Div. 172, 216 N. Y. S. 295, 1926 A. M. C. 954, it was held that the Jones Act applied only to seamen on American vessels. In an opinion of the Circuit Court of Appeals for the Second Circuit, written by Judge Hough, the above decision appears to be approved though the court says that the general applicability of the Jones Act did not arise in the later case. The Pinar Del Rio (C. C. A.) 16 F.(2d) 984, 1927 A. M. C. 268, 270.

In The Seirstad (D. C.) 12 F.(2d) 133, the court on account of special circumstances did not decline jurisdiction, although the existence of a government insurance fund in Norway from which libelant would be entitled to compensation, was shown by the objections of a Norwegian consul.

In The Falco (D. C.) 15 F.(2d) 604, the court declined jurisdiction because it was shown that the seamen could make application, through the consul, for compensation under a compulsory insurance law of Sweden. The latter case was in The Falco (C. C. A.) 20 F.(2d) 362, affirmed, not for the same reason, but because the court found that leaving a cover off a hatch did not create a defect in seaworthiness, where the question was one of an injured seaman. See, also, The Sirius (D. C.) 47 F. 825; The Ferm (The Boheme) (D. C.) 15 F.(2d) 887.

[3] Foreign law, in any case, is a question of fact to be alleged and proven, and the court cannot be controlled by facts found in the Sierstad Case, supra; Cuba R. R. Co. v. Crosby, 222 U. S. 473, 479, 32 S. Ct. 132, 56 L. Ed. 274, 38 L. R. A. (N. S.) 40.

[4] The remaining question for consideration is: Whether the burden rests upon libelant, or upon claimant, to plead and prove the law of Norway. Until otherwise shown, the law of Norway in a case such as the present will be presumed to be the same as the law of the United States; and, if it is not, it appears more reasonable to place the burden of showing that fact upon claimant than upon libelant. The Scotland (C. C. A.) 105 U. S. 24, 26 L. Ed. 1001; Robinson v. Detroit & C. Steam Nav. Co. (C. C. A.) 73 F. 883, 887; The Apurimac (C. C. A.) 12 F.(2d) 500, 1926 A. M. C. 703, 705. When the tort is committed, not only on a foreign ship, but in foreign territory, there may be no presumption that the foreign law is the same as that of the United States; but when it is so committed, within the limits of the United States, and the injured seaman is of the nationality of the ship, there is no presumption that the law of such foreign nation differs from the general maritime law as recognized by the United States.

In Cuba R. R. Co. v. Crosby, supra, the lower courts were overruled for going upon the ground that in the absence of evidence to the contrary, the substantive law of the forum would control; but in that case the plaintiff was injured in a mill in Cuba, and the law in question related to one of the refinements of the law of assumption of risk. The court said, however, at page 478 (32 S. Ct. 132):

" * * * It may be that in dealing with rudimentary contracts or torts made or committed abroad, such as promises to pay money for goods or services, or battery of the person, or conversion of goods, courts would assume a liability to exist if nothing to the contrary appeared. * * * The law of the forum is material only as setting a limit of policy beyond which such obligations will not be enforced there. *With very rare exceptions* the liabilities of parties to each other are fixed by the law of the territorial jurisdiction within which the wrong is done and the parties are at the time of doing it. American Banana Co. v. United Fruit Co., 213 U. S. 347, 356 [29 S. Ct. 511, 53 L. Ed.

826, 16 Ann. Cas. 1047]. See Bean v. Morris, 221 U. S. 485, 486, 487 [31 S. Ct. 703, 55 L. Ed. 821]. That and that alone is the foundation of their rights." (Italics of this, and not that, court.)

That that part of the law of the sea now being considered was one of those "rare exceptions" that the court alluded to by the foregoing language, is shown by an examination of the first case cited by it. American Banana Co. v. United Fruit Co., 213 U. S. 347, 356, 29 S. Ct. 511, 53 L. Ed. 826, 16 Ann. Cas. 1047, and The Hamilton, 207 U. S. 398, 28 S. Ct. 133, 52 L. Ed. 264, there cited.

The dependence of a seaman upon his ship has by court and statute long been recognized. A copy of the seaman's contract, the shipping articles, are required to be posted up in such part of the ship as to be accessible to the crew. R. S. § 4519; Comp. Stat. § 8310 (46 USCA § 577). In a suit the burden is on the master to produce the articles. R. S. § 4547; Comp. Stat. § 8336 (46 USCA § 604).

The law even protects the seaman from himself. It is unlawful to pay a seaman wages in advance of the time he has earned them. Act June 26, 1884, as amended; Comp. Stat. § 8323 (46 USCA § 599). The seaman can only be paid his wages in the presence of the shipping commissioner. R. S. § 4549; Comp. Stat. § 8338 (46 USCA § 641).

Statutes have been enacted to protect him in the matter of his food, his clothing, and his medicine. R. S. § 4612, as amended, Comp. Stat. § 8392 (46 USCA § 713); R. S. § 4572, Comp. Stat. § 8361 (46 USCA § 669); Act June 26, 1884, Comp. Stat. § 8362 (46 USCA § 670); R. S. § 4569, Comp. Stat. § 8358 (46 USCA § 666); R. S. § 4570, Comp. Stat. § 8359 (46 USCA § 667).

Requiring claimant, rather than libelant, to plead and prove the law of Norway, if different from that of the United States, is not unreasonable.

Exceptions will be overruled.